*145] * President and Directors of the Company of the Bank of North America *against* Robert M'Knight, who survived William Allison.

S. C. 2 Dall. 158.

What is reasonable time of notice to give to an indorser of a promissory note of its being dishonoured, is settled to be matter of law; but the strictness required in England has not obtained here. Protests are not absolutely necessary on notes being dishonoured.

ACTION against the defendant as surviving indorser of two promissory notes. One of them was not disputed. The other which came in question, was a note for $425, dated 10th February 1785, drawn by Isaac Sidman, payable to Allison and M'Knight or order, in forty-five days after date, and by them indorsed to the bank. This note therefore became due on the 27th March, and the three days of grace expired on the 30th March.

It appeared in evidence, that the note had been discounted at the bank at the particular request of the defendant, and that he complained of its not being done on his first application: that he had promised to take up the note as the accommodation was made on the credit of their house, and that it was the uniform practice of the bank, that the persons who received the acoommodation, should indorse the note upon receiving the money, though they had actually made the note in the first instance; and the runner of the bank swore, that the second day after the days of grace were expired, he gave notice to M'Knight and Allison, that the note was not paid.

On the part of the defendants it was proved, that Sidman, at the time of drawing the note, was actually indebted to Allison and M'Knight. The protest was not made until the 4th April.

Mr. Moses Levy for the defendant insisted, that due diligence had not been used by the plaintiffs in giving the defendant notice, and that thereby they had made the note their own. It is of consequence to the mercantile world that the greatest strictness should be used in these transactions. It has been resolved in Robinson et al. *v.* Vogel (Dall. 255) that the right of indorsees to call upon the indorsers of notes, is founded on the custom of merchants, and the courts will proceed on them as on bills of exchange under the stat. of 3 and 4 Annæ c. 9. There it appears that a very trifling negligence on the part of the holder will operate as a discharge to the indorser. This rule is admitted in that case to be just and proper when the course of trade is regular. It is true, there is a distinction taken between the rules laid down in England and this state, as to sending notice by the next post to the

[Bank of North America *v.* M'Knight.]

indorser who lives at a distance from the indorsee, owing to the local situation of this country, and the want of that regular and uniform means of communication * which [*146 exists in Great Britain; but where they live near to each other, the rule subsists equally in both countries, and is grounded on reasons equally applicable to each. A bill given on a banker at twelve at noon and accepted at night: the banker stopped payment before morning: the jury found a verdict for the defendant, on a suit brought by the payee of the bill against the drawer, and a new trial was refused by the court. And per Foster J. reasonable time is what time is sufficient to receive the money in. Hankey *v.* Trotman. 1 Blackst. Rep. 1. (Vid. Tindel et al. *v.* Brown. 1 Term Rep. 167.) Notes in towns must be demanded of the drawer the next day after they become due, adding the days of grace. Bayley on Bills 40. And the solvency or insolvency of the drawer does not alter the necessity of notice within the proper time to the indorser. Ib. 30. The reasonableness of the time of notice to the indorser is a question of law to be determined by the court. Lovelass on Bills 162. Kyd on Bills 82. Here the notice to the indorsers was not given in due time, and therefore the indorsees cannot resort to them for remedy. They have forfeited their right of recovery by their own laches.

Messrs. Lewis and Tilghman *pro quer.* admitted the principle, that in general cases, the holder of a note should give notice to the indorser in a reasonable time; but the matter now before the court is taken out of the common rule, for the bank gave the credit to the house of the defendant, and his promising to take up the note on the accommodation being made to his own benefit, waived the necessity of giving him any notice whatever.—Independent however of this circumstance, the strictness of notice required in England has not been, nor ought to be adopted in Pennsylvania, on account of our peculiar circumstances.

No protest was necessary in England on an inland bill of exchange, until the stat. of 9 and 10 Will. 3. c. 17. The stat. of 3 and 4 Anne, c. 9, put promissory notes, when indorsed, on the same footing with inland bills; that is, it rendered them negotiable in the same manner, and gave the same remedy to the possessor. Kyd, 79. But both these statutes have been extended by practice only, and in those points only where the situation of this country required it. It never has been the usage of Pennsylvania, either in her courts of justice, or amongst mercantile characters, or others, to adopt the strict rules applicable to banking houses in Great Britain, in the cases of promissory notes, nor would it redound to the interests or convenience of the community to pursue them. What is reasonable time as to notice, must be, and

always hitherto has been, governed by the circumstances of each transaction.

*M'Kean C. J.    I sit single in the determination of this cause, my brethren declining to take any part in the decision, as being stockholders in the bank of North America.    The present case seems to differ from ordinary notes, by reason of the special undertaking of the defendant. In this business, notice was given to the indorser, the second day after the note became due, allowing for the usual days of grace.    A single day has only intervened.

What is reasonable time for notice, in such cases, where the parties live in the same city, or near to each other, is now settled to be matter of law, in order to preserve an uniformity of decision.    Great strictness is required as to this point in England, and it is right that it should be so, when so large a paper credit is in circulation, and where so many purchases are made in the national funds.    The rule then is, that notice should be given to the indorser when the bill or note is dishonoured, the day after the expiration of the days of grace, where the parties live in the same city or town; and by the next post, where they live at a distance from each other. This strictness has not obtained amongst us.    Before the late revolution, no protests were made on promissory notes, nor is it now usual, except in this city, in the transactions of the bank; nor is it absolutely necessary.    Vide 1 Espin. 36.    It has not been the custom, nor has it been the general prevailing idea that there existed any necessity, to call on the drawer on the very day the note became demandable, or to give the indorser immediate notice.    No period has been fixed for such notice by any judicial determinations amongst us, that I know of.    It seems to have rested on the general observation made by Judge Shippen, (Dall. 255) that if the holder of a note, without giving notice of its being dishonoured, retains it so long in his hands after the day of payment, as to create a presumption that he means to take upon himself to give a new credit to the drawer, the want of notice will operate as a discharge.    And in the succeeding page, he declares, if the holder of the note retains it two or three months, or any other unreasonable time, without giving notice to the indorser, he ought certainly to bear the loss.

As no precise rule has yet been fixed, neither will I, circumstanced as the court is, lay one down in this case, but will submit it to the jury, whether, taking into consideration the general custom which has hitherto prevailed, and also the special undertaking of the defendants, there has been notice given to the indorser in reasonable and convenient time.    It will soon become necessary for the court to adopt some fixed rule as to future cases, where the holders of the bill and indorsers live in the *same city or town.    The business of banking has greatly increased of late, and circum-

[Bank of North America *v.* M'Knight.]

stances exist amongst us at present, which make a greater degree of strictness, as to notice to indorsers necessary, than has formerly obtained.

Verdict for the plaintiffs, on both notes.

Cited in 1 Rawle, 340, in support of the proposition that verbal notice of non-payment to the endorser by the drawer is sufficient.

Cited in 7 S. & R., 326, as a ground for submitting to a jury the question of reasonableness of a notice of non-payment to an indorser.

Referred to in 67 Pa., 64, as illustrating the early history of the law·of promissory notes in America.