Tilghman C. J.
The question in this case is, whether a promissory note, discounted by the Farmers’ and Mecha *115 xiics’ Bank of Philadelphia, is' to be placed ori-the footing of a specialty, with respect to the order in which debts due from deceased persons are'to be paid by their executors. It depends on the “act to incorporate the -Farmers’ and Mecha“nics’ Bank,” by which (sect. 4.. art. IT.) it is enacted, that “ all notes or bills discounted by the said corporation, or depositedfor collection, and falling due at-the said bank, shall “ be, and they are hereby, placed on the same footing as foreign “ bills of exchange, or as bills obligatory, so that the like benefit shall be had in the payment, and the like remedy for the re- “ covery thereof against .the drawer and' drawers, endorser “ and endorsers, ánd their representatives, except so. far as “ relates to damages.” Bills of exchange and bills obligatory are very different things. Each have their particular privileges or advantages, but there is no privilege or advantage which is common to both. .The indorsee of a bill of exchange holds it free from any right of defalcation or set-off by the drawer, but he has no preference or priority in payment out of the estate of a deceased person. On the contrary, the assignee of a bill obligatory, takes it-liable to defalcation or set-off, but'is entitled to a preference to simple contract debts, in the order of payment, out of the estate of deceased persons. Therefore, when the act puts -promissory notes on the same footing as ft eign bills of exchange, or bills obligatory, it gives the holder of the note all the advantage» appurtenant to bills of exchange or bills obligatory. It has been said, that a bill obligatory is a term which might have-been misunderstood by the legislature. But I cannot suppose so. In construing laws we are not to attribute to the legislators ignorance of their own expressions, unless a mistake is manifest. A bill obligatory, is an instrument in common use and too well known to be misunderstood; It is a bond, without a condition; sometimes called a single bill, and differing from a promissory note, in nothing but the seal which is affixed to it. The inconvenience of giving this preference to the Farmers’ and Mechahics’ Bank has been much insisted on. But where the law is plain, we have no right to alter it, in order to remove an inconvenience. We must’ either place this promissory note on the footing of a specialty, or reject part of the law; because there will be no benefit in the payment, if there is no priority in payment. It ha» been asked, why the legislature should have intended to give *116 this Bank an advantage over the Bank of Pennsylvania, in which the Commonwealth'has so great an interest. We cannot always develope the causes which influence the minds of , , , , 1 . . _ , . legislators ; they are otten or a secret nature. But that it was inten¿ed to give the Farmers’ and Mechanics’ Bank an advantage, will appear at first glance to any person who casts his b . n,. • „ . „ eye over the two laws. 1 he expressions are so materially difterent, that it is impossible it should have been intended to place them on the same footing. In the act for incorporating the Bank of Pennsylvania, it is only said, (sect. 7. art. 13.) that all notes or bills at any time discounted by the said corporation, shall be placed-on the same footing as foreign bills of exchange, &c. so that not only is the act silent as to bills obligatory, or any benefit of payment attending them, but even the preference attached to promissory notes is confined to those which are discounted by the Bank ; whereas, in the Farmers’ and Mechanics’ Bank, it is extended to all notes deposited for collection, and falling due at the Bank. Possibly the circumstance suggested by the plaintiff’s counsel, may have been the cause of the preference, viz. that the Farmers’ arid Mechanics’ Bank was obliged (art. 14.) to make loans to the amount of one-tenth part of its capital, for a year, to. the farmers of this state, if applied for, at an interest of six per cent, per annum. This suggestion appears the more probable, when we perceive, that exactly the same advantage is given to the numerous banks incorporated by the act of 21st ■ March, 1814, all which are obliged to make loans of part of their capital, to fármers. It is not improbable, however, that when the legislature turns its mind to the subject, it may be thought proper to place all incorporated banks on the same footing. Be that as it may, it is our duty to interpret the law as it exists ; ■ and my opinion. is, that the promissory note in question, is to be considered as a specialty, by the defendant, in paying the debts due from the estate of his testator.
Yeates J.
It cannot be denied that the Legislature possess the- legitimate power of conferring Special privileges and immunities, as well on corporate bodies as on individuals: but »it is equally certain, that such particular exceptions from the general regulations* of society, must plainly appear and be free from all ambiguity. In a government of laws, the citizens stand on one common and equal footings and unless some *117 good reason can be assigned, foundéd on the Welfare of all, preferences will not be supposed to have been granted to some monied institutions, which are denied to others. Oúr minds are at once struck with the singularity of the metaphorsosis contended for, on the part of the Farmers’ and Mechanics’ Bank; so that on one side of the street a promissory note between the same parties shall retain all the qualities and attributes of its original nature: while, on the other side of the street, and in other parts of the city, a like note shall pass into a specialty, with all its" character and consequences, which never were contemplated by the parties ; and that this change should take effect even as to notes or bills deposited in that Bank for collection! In vain do I -search for a solid ground for this distinction of favouritism ! It contradicts all my ideas of justice, equity, and sound policy.
- I agree, that the'expressions, “bills obligatory” may often signify single bonds, under seal, without condition; but, when used in the 17th article of the 4th section,- of the act of incorporation of the plaintiffs, I hold their proper, construction to be instruments of that kind, mentioned by Ma~ lyne, in his Lex Mercatoria, p. 72. 74. and recognised in 4 Com. Dig. 238. (1st edit.) whereby, one merchant by writing, -acknowledges himself in debt to another in such a sum, to be paid at such a day, and subscribes it at a day and place certain. Sometimes a seal is put to it; but it binds by'the custom of merchants, without seal, witness, or delivery. Those expressions are susceptible of either of the meanings I have mentioned, but I feel myself warranted in adopting their construction in the latter sense, under the rules and principles for expounding -of statutes, cited by the defendant’s counsel.
The words “ drawer and drawers, indorser and indorsers,” peculiarly apply to bills of exchange, and cannot with the le'ast propriety be referred to specialties. Bills of exchange are classed with bills obligatory, as entitled to like benefit by the disjunctive or. If the legislature had intended to alter the provisions of the intestate act of 19th Aprij, 1794, as to the priority of payment of the debts of persons who died indebted to the Bank by discount or otherwise, it would have been so expressed in plain and direct terms. Although the 13th article of. the ffth section of the act of 30th March, 1793, incorporating the Bank of Pennsylvania, directs, that all notes or bills at any time discounted by that corporation, should be placed on the-same footing as foreign bills of *118 exchange, yet in Roberts v. Haye's executors, (2 Dall. 260,) this Court held, that the provision did not extend to priority Payment- Under the old act of 1705, directing the order of payment of debts of persons deceased, obligations, bills penal, and bills of exchange, were ranked in the same class. "^le 14th section of the áct of 19th April, 1794, alters the former provisions, but the law was not passed when the Bank of Pennsylvania was incorporated.
The invidious distinction contended for by the plaintiffs, is plainly injurious to the interests of the state, and when it is made known to have been sanctioned by law, creditors will naturally recur to the Bank, which affords them superior security and preferences in the management of their monied concerns. The state holds three-fifths of the stock in the Bank of Pennsylvania, and is a large stockholder in the Bank of Philadelphia, but it possessed no part of the stock of the Farmers’ and Mechanics’ Bank. What inducement could the legislature have to give the notes discounted or deposited for collection, in the latter Bank, a most beneficial legal operation, which is denied to other Banks wherein the government was deeply interested ? In the construction of wills, judges have put the question; would the testator have used the words in the sense contended for ? would he, when asked, have declared such to have been his intention? A law is the will of the community, and should be interpreted according to its true meaning. If the members of either branch of the legislature had been asked in 1809, whether they meant to confer the peculiar and exclusive privilege on the Farmers’ and Mechanics’ Bank, by which they would necessarily gain the most substantial advantage over the, old established banks in the city, no man can doubt what would be their unhesitating answer.
It has, however, been urged that the general law' of the 21st March, 1814, establishing the grounds on which no less than forty-one new banks might come into operation, contains a provision in the same words in their favour, as is inserted in the incorporation of the plaintiffs. So far from this appearing to me a well-founded argument against my construction, it operates in my mind as a confirmation of the opinion I have expressed. I never can bring myself to believe that the legislature, when they inserted the words “ bills obligatory” in this late act, intended to grant special favours and indulgences to insignificant country banks, removed at a distance from *119 active commerce, and a facility in obtaining deposits from its operations, which other banks did not possess. I believe that one uniform rule was meant to govern all the state banks, that they stood on one common footing — and that the same remedies, upon the same grounds, were intended to be equally open to them all.
I am of opinion that the plaintiffs are not entitled to the preference they have contended for.
Brackenridge expressed his concurrence with Mr. Justice Yeates.