[LANCASTER, JUNE 1, 1829.]

RAHM, Executor of KAPP, *against* The PHILADELPHIA BANK.

IN ERROR.

When a promissory note is payable at a particular place, such as a bank, and on a particular day, and the endorsee is at the bank until it closes, at the usual hour, on the day on which the note falls due, ready to receive payment, no further demand on the drawer is necessary, in order to charge the endorser. Verbal notice, to the endorser, of non-payment by the drawer is sufficient. The act of assembly incorporating the *Philadelphia* Bank, by the terms of which, notes discounted by that bank, are placed on the same footing as foreign bills of exchange, does not render a protest and notice thereof to the endorser necessary, in order to charge him.

WRIT of error to the Court of Common Pleas of *Dauphin* county. The *Philadelphia* Bank was plaintiff below, and sued on the following note, endorsed by *Kapp,* and discounted by the bank:—

"*Harrisburg, December* 12th, 1814.—Sixty days after date, I promise to pay to *Michael Kapp,* or order, at the Office of Discount and Deposite, *Harrisburg,* without defalcation, fifteen hundred dollars, for value received.

"*Samuel Laird.*"

(Rahm, Executor of Kapp, *v.* The Philadelphia Bank.)

It was in evidence, that *Fahnestock*, the president, on the day of payment, the 13th of *February*, 1815, after the board of directors had broken up, seeing *Kapp*, told him that the note was not renewed; that he, *Kapp*, had better renew it, or the note would be under protest; to which *Kapp* answered, that he would endorse no more for *Laird*. It also appeared, that *Carson*, a clerk in the bank, on the same 13th of *February*, after bank hours, by direction of the cashier, took the note to *Kapp* to demand payment, or a renewal, when he replied, that he would do nothing in it; that afterwards, on the same day, *Carson* carried the note to a notary public, who then protested it. The notary neither gave nor sent any notice to *Kapp:* but, the next day, the 14th, the same clerk, by the direction of the cashier, went to *Kapp*, and told him the note was protested, and requested him to pay it off, or have it renewed. Before the note became due, *Laird*, the drawer, had died, and administrators of his estate had been appointed.

On the trial, the plaintiff below requested the court to charge the jury as follows:—

"1. That when the note is payable at a particular place, such as a bank, and on a particular day, and the endorsee was there until the bank closed, at the usual hour of closing the bank, on the day it fell due, ready to receive payment, no further demand on the promiser is necessary to charge the endorser.

"2. That there is no particular form of notice, to the endorser of a note, prescribed by law; it is enough if under all circumstances it puts him on inquiry; and this may be as well a verbal as a written notice; and this notice may be given by *any person authorized* to give such notice; and that the agency of a notary public is not necessary to give such notice, nor is it his duty to do so.

"3. That a protest of a promissory note, or inland bill of exchange, and notice thereof, are not necessary to charge the endorser—This doctrine only applies to foreign bills of exchange.

"4. Here the defendant lived in the town where the bank was held; no written notice was necessary; verbal notice in this case was more regular.

"5. That the act of assembly, incorporating the *Philadelphia* Bank, and which places notes, or bills discounted at that bank, on the footing of foreign bills of exchange, applies only to the case of defalcation, and does not alter the nature of the promissory note, so as to require a protest, as in case of a foreign bill of exchange.

"6. That this suit is founded on a promissory note, payable at the Office of Discount and Deposite at *Harrisburg*, where both the drawer and endorser lived—and verbal notice was given by *John Carson*, a clerk in the bank, after the bank closed, on the same day the note fell due, by presenting the same to the endorser, *Michael Kapp*, the defendant in this cause, that the note was not paid; and a request to pay the same, or renew it with another note, was made,

(Rahm, Executor of Kapp, *v.* The Philadelphia Bank.)

which was sufficient to charge the endorser without protesting the note, or producing a copy of a protest of the same note to the endorser.

"7. That it having been proved in this cause by the notary public, that the note was regularly protested on the day it fell due, and after the hour of closing the bank, notice of which protest was given to the defendant on the next day, by a regular clerk of the Office of Discount and Deposite, this is sufficient notice in law, to charge the endorser, without producing the protest to him."

The COURT, in their charge to the jury, among other things, stated, "That demand of payment of a note at the Office of Discount and Deposite, is sufficient, if the note is drawn payable at the said office, for in such cases, the payment of the note at the Office of Discount and Deposite, is part of the contract. But where no time and place are fixed for the payment of a note, then there must be a demand on the drawer.

"If the Office of Discount and Deposite was the owner of the note, and held the note on the day, and at the place mentioned in it for payment, and was ready to receive the money, notice to the drawer to pay it was not necessary, nor was a demand on the administrators of Mr. *Laird*, (who died before the note fell due,) necessary: a notice, by the clerk of the Office of Discount and Deposite, sent for the purpose, to the endorser, of the default of payment by the drawer, is good notice if it be given in due and proper time.

"Verbal notice is sufficient—a written notice is not necessary. No form of notice to the endorser is prescribed by law. All that is necessary is, that he should have such notice, either verbal or written, given in time, as will inform him of the default of payment by the maker or drawer, so as to put him on an inquiry, and prepare him to pay it, or defend himself.

"No protest was necessary; and notice of a protest was not required or necessary to be given to *Michael Kapp*. It is sufficient if the endorser receives notice in a reasonable time, of the non-payment of the note by the drawer. The provision in the third section, article tenth, of the act incorporating the *Philadelphia* Bank, 4 *Smith,* 152, 153, which places notes discounted by the bank, ' on the same footing with foreign bills of exchange,' is for the purpose of preventing a defalcation or set-off by the drawer against the endorsee, of such equitable matters and circumstances to which the note was subject in the hands of the endorser. 2 *Dall.* 263. A protest is not essentially necessary to enable the endorsee of a note to recover; but is indispensably requisite in the case of a foreign bill of exchange.

"It is contended by the defendant's counsel, ' that there is no evidence that Mr. *Laird,* or his administrators, had not funds in the Office of Discount and Deposite, to meet the payment of the note.' There is evidence of a protest of the note; and this protest

is *prima facie* evidence of the fact that there were no funds there: if there were funds there, it lies on the defendant to show the fact.

"And although this protest is stated to be made at the request of the *'Office of Discount and Deposite,'* this does not render the protest void; for it is not necessary that it should be stated, that it was made at the request of the *Philadelphia* Bank. Nor does the delay in bringing suit, for two years, in law, discharge the endorser.

"Did *Michael Kapp* receive notice on the 13th of *February*, 1815, that the note was not paid? This is a fact for the jury to ascertain from the evidence. If *Michael Kapp* did not receive such notice on that day, he would be discharged from his liability as endorser. If he did receive such notice on that day, he will be liable for the payment of the note. As he lived in the same town with the other parties, notice ought to have been given on the same day, the 13th of *February*, 1815; for the earliest notice ought to be given. Notice given on the next day is not sufficient."

The counsel for the plaintiff excepted to the charge of the court on the *seventh* point, and the residue of the charge was excepted to by the counsel for the defendant. The verdict was for the plaintiff, and the defendant took a writ of error.

The following errors were assigned in this court:—

"1. That the court erred, in law, in charging the jury on the plaintiff's points, Nos. 1, 2, 3, 4, 5, and 6.

"2. The court gave it as the law, that no protest was necessary to charge the endorser, and create a liability in him to pay.

"3. That there was no demand of payment of the note made of the payer, *Samuel Laird*, or of his representatives, when the note fell due; and, no notice of a demand of, and non-payment by the payer, given to the endorser, as required by law; and, that the statements filed in the cause, set out no cause of action.

"4. That the court erred in their general charge to the jury, in stating, that demand of payment of a note, at the Office of Discount and Deposite, is sufficient, if the note is drawn payable at the said office: that if the Office of Discount and Deposite was the owner of the note, and held the note on the day, and at the place mentioned in it for payment, and was ready to receive the money, notice to the drawer to pay it was not necessary; nor was a demand on the administrators of Mr. *Laird* (who died before the note fell due,) necessary; and, that a notice by the clerk of the Office of Discount and Deposite, sent for the purpose to the endorser, of the default of payment by the drawer, is good notice, if it be given in due and proper time: That no protest was necessary; and notice of a protest was not required, or necessary to be given to *Michael Kapp;* and it is sufficient if the endorser receives notice in a reasonable time of the non-payment of the note by the drawer. And that the provision in the third section, article tenth, of the act incorporating

(Rahm, Executor of Kapp, *v.* The Philadelphia Bank.)

the *Philadelphia* Bank, 4 *Smith*, 152, 153, which places notes discounted by the bank, 'on the same footing with foreign bills of exchange,' is for the purpose of preventing a defalcation, or set-off by the drawer against the endorsee, of such equitable matters and circumstances to which the note was subject in the hands of the endorser," &c.

*Douglas* and *Elder*, for the plaintiff in error, argued, That there is no averment in the record, nor was there any proof, of demand on the drawer, or his representatives. Demand is necessary, or an effort to make it. *Chitty on Bills*, 279. *Duncan* v. *M'Cullough*, 4 *Serg. & Rawle*, 481. It is immaterial at what place the note may be payable, under the circumstances of this case. The endorser is but a surety. His promise is conditional. Only the law merchant makes him liable. *M'Kinney* v. *Crawford*, 8 *Serg. & Rawle*, 353. There is no dispensing with notice on account of death, bankruptcy, &c. *Gibbs* v. *Cannon*, 9 *Serg. & Rawle*, 201. Nearly every point of this case seems decided by the case of *The Juniata Bank* v. *Hale*, 16 *Serg. & Rawle*, 159. But the act of assembly is conclusive. The words are absolute and peremptory. *"And all notes, or bills, at any time discounted by the said corporation, shall be, and they are hereby placed on the same footing as foreign bills of exchange; so that the like remedy shall be had for the recovery thereof against the drawer and drawers, endorser and endorsers, and with like effect, except so far as relates to damages, any law, custom, or usage to the contrary thereof, in any wise notwithstanding.*" 4 *Sm. L.* 152, sect. 3*d*, art. 10*th*. Now, the rule contended for is, that a protest of a foreign bill of exchange must be made, and legal notice of the protest given, or sent, unless as against him who draws without funds in the hands of the drawee. *Rob. Dig.* 378, *et seq. Gale* v. *Walsh*, 5 *T. R.* 239. 1 *Selw. N. P.* 321. 2 *T. R.* 713. 2 *Comm.* 467, &c. *Chitty on Bills*, 279, *et seq. Ib. Appendix, Narr. on Foreign Bills. Lenox* v. *Leverett*, 10 *Mass.* 1. Indeed, what possible use can there be in a protest, if it is to be concealed, and no information of it given?

*Shoch* and *G. Fisher*, contra, denied, that giving a copy of the notice was necessary, either by the mercantile law, or by the act of assembly. The protest, itself, is unnecessary on a note, or inland bill. *Chitty on Bills*, 276, 284. 5 *Johns. Rep.* 375. *The Bank of North America* v. *M'Knight*, 1 *Yeates*, 145. As to the words of the charter relied on, their sole intent was to obviate the mischiefs of set-off. It was so decided on the same words in another law, in the case of *Roberts* v. *Cay's Executors*, 2 *Dall.* 260. This decision was followed in the construction of much stronger words of a bank charter, in the case of the *Farmers' and Mechanics' Bank* v. *Massey's Executor*, 2 *Serg. & Rawle*, 114, and *Wolfersberger* v. *Bucher*, 10 *Serg. & Rawle*, 10. Here notice of the protest was in fact given. Even were it the very case of a foreign bill

(Rahm, Executor of Kapp, *v.* The Philadelphia Bank.)

of exchange, the decision of the court below was right. 1 *M. & S.*
289. *Ib.* 545. 3 *Camp.* 334. 2 *Johns. Cas.* 337. 10 *Johns. Rep.*
490. 11 *Johns.* 231. *Chitty on Bills*, 289.

The opinion of the court was delivered by

Tod, J.—The errors alleged may, for the sake of shortness, be
reduced to three. 1. In deciding, that no demand was requisite
upon *Laird*, the maker of the note, or upon his representatives.
2. That verbal notice by the clerk of the bank, was sufficient. 3.
In deciding, that under the words of the act of assembly, incorpo-
rating the bank, both the notice of protest, and the protest itself,
were unnecessary.

On the two first allegations of error, there is not, except from the
peculiar wording of the act of assembly, the least doubt with any
member of the court. We all agree, that in the common case of a
note, under the circumstances here appearing, it would have been
unnecessary to make any demand of the drawer, or his representa-
tives. *Chitty on Bills*, 395, 295, 297. *Berkshire Bank* v. *Jones*,
6 *Mass.* 524. Also, that the agency of a notary public was unne-
cessary, and that the verbal notice sent by the clerk of the bank
was sufficient. *Chitty on Bills*, 276, 284, 293, 295, 297. *Bank of
North America* v. *M'Knight*, 1 *Yeates*, 145. *S. C.* 2 *Dall.* 158.

On the *third* point; was a protest, and notice of it to the endorser,
rendered necessary by the words of the act of assembly, placing
notes discounted at this bank on the same footing with foreign bills
of exchange? It seems to me not. As to the reason for imposing,
*per* force, this troublesome formality upon the bank and the dealers
with it, a formality which may be dispensed with, if the holder
pleases, in every common case of a note or inland bill; it is not even
alleged, that any reason exists. But it is argued, the words of the
law are positive to that effect. They are not so in my opinion.
Clear it seems to me, that the legislature had not the remotest in-
tention to lay down any indispensable form of proof, or to change
the law of evidence, but only to secure the bank from loss or dis-
pute, arising out of the previous dealings between the parties to a
note or bill discounted, and from all defence of want or failure of a
consideration. It seems very common in statutes providing for any
species of negotiable paper, against the strict rule of the common
law, to declare the intent by express reference to foreign bills of
exchange. There are similar words in most, if not all of our bank
charters. So, in the first and second acts of congress, creating the
Bank of the *United States.* In the very act of assembly in ques-
tion, the usual bank notes to be issued by the bank of *Philadelphia*,
though not under their seal, shall be binding and obligatory upon
the corporation, *in the like manner, and with the like effect, as
foreign bills of exchange now are.* Now, it will hardly be con-
tended, that a note of this bank, payable to A. B. or bearer, may

(Rahm, Executor of Kapp *v.* The Philadelphia Bank.)

not be sued on by C. D. without the forms of protesting. But I take the question to be already settled. On the same words in the charter of the Bank of *Pennsylvania,* this court held, in *Roberts* v. *Cay's Executors,* 2 *Dall.* 260, that a note thus discounted, was placed on the footing of a foreign bill of exchange, only as to the remedy and the exemption from set-off. And in effect this decision was followed up in the cases of the *Farmers' and Mechanics' Bank* v. *Massey's Executor,* 2 *Serg. & Rawle,* 114, and *Wolfersberger* v. *Bucher,* 10 *Serg. & Rawle,* 10. There would seem to be another ground upon which this judgment might be sustained. Admitting that the case requires the same evidence which would be required to support an action on a foreign bill of exchange, sent from a distant country, yet it seems to be the settled mercantile law, that neither the copy of the protest, nor notice of it, need be given or sent, in the case of a foreign bill, where the party to be affected happens to be in the country at the time of the refusal to accept or to pay. My opinion is to affirm the judgment.

ROGERS, J. and SMITH, J., concurred in the above opinion. GIBSON, C. J. and HUSTON, J. dissented.

Judgment affirmed.