Tilghman, C. J.
This action was brought by Smith Allison, the plaintiff below, against James Stéwart,. the plaintiff in error, on a promissory note, of which- Allison was indorsee and Stewart indorser. The plaintiff gave in evidence a protest by Benjamin Nones, notary public, under his official seal, in which protest it was certified that .the. said notary had given notice of the non-payment of the note to the defendant. The defendant then called the notary himself, who was sworn as a witness without opposition, and deposed, “ that the protest was in the handwriting of his son, then absent on a voyage to the West Indies ; that he, the said Nones, did not give notice himself, but his son, who attended to that business for him; that he had no knowledge of notice having'been given -to the indorser ofthe note of non-payment by the drawers, except what his son told him, who said that he had given the notice, and that this had been the practice of doing business among • the notaries.” This evidence having been given, the counsel *328 for the defendant prayed the Court to charge the jury, that the protest, explained as it had been by the testimony of Benjamin Nones, was not evidence of notice of non-payment of the said note to the indorser, and that as no other evidence of notice had been given, the verdict ought to be for the defendant. "On the- other hand, the counsel for the plaintiff prayed the Court to charge the jury that it was evidence, and that the verdict should be for the plaintiff. The Court, however, not complying exactly with the prayer either of one or the other, charged the jury in the following words: “That there was evidence of notice, namely, the said protest, notwithstanding, the explanation of which, the jury were to judge.”
It seems to me, that both parties asked the Court for too much. Evidence had been given on both sides, without opposition. The cause turned on a matter of fact, (notice to the defendant); and that being the case, the Court had no right to direct the jury to whom they should give their verdict. By the act of 2d January, 1815, “ the official acts, protests, and attestations of all notaries public, (acting by the authority of this Commonwealth) certified according to law, under their respective hands and seals of office, may be readand received in evidence of the facts therein certified. Provided, that any party may be permitted to contradict, by other evidence, any such certificate.” In this case, the official protest of the notary had been given in evidence by the plaintiff, and' parol evidtnee had been given by the defendant of certain things, tending, in his opinion, to take off the effect of that certificate. Mho, then, was to judge between these two pieces of evidence ? Certainly not the Court, but the jury. It was very possible that the jury might give more credit to the official certificate, than to the oath of the notary. A notary may be tampered with after giving his certificate; or the jury might think that the certificate and the parol evidencé were not inconsistent. In my opinion, then, the Court was right in telling the jury as they did, that the plaintiff was not entitled to recover unless notice of non-payment was given to the defendant; that the notarial certificate was legal evidence, on which, together with the parol evidence, the jury were to decide whether notice had been given or not. I am, therefore, of opinion, that the judgment should be affirmed.
*329 Gibson, J.
The Judge who tried the cause, it seems to me, fully met the point urged by the defendant below, and expressed his opinion without ambiguity. The counsel insisted “ that the protest, taken xoith the explanations given by the said. Benjamin Nones, (the notary) was not evidence of the non-payment of the note by the drawer on which the Judge charged, “ That, of the fact of notice, the act of assembly made the protest proof; that it had been contended that the circumstances given in evidence, took the case out of the act of assembly, but the Court were of a different opinion, and, in order to give the defendant an opportunity of excepting, charged that there was evidence of notice, (I use the very words of the bill of exceptions) notwithstanding the explanation^ of which the jury were to judge.” Now, from all this, I broadly dissent. The assertion, in a protest, of a fact founded on hearsay, which would be incompetent to be heard from a witness attesting in the ordinary way, is not made competent and legal by the act of assembly. A protest is prima facie evidence of the non-payment^ of a promissory note, only by force of the act of assembly, and is open, both to explanation and contradiction. The value of the distinction between explanation and contradiction will appear hereafter. Then what change in the law of evidence did the act of assembly mean to produce ? Evidently nothing more than to render that competent under the sanction of an official oath, which would, otherwise, have to be attested by an oath taken in the presence of the Court and jury ; thus substituting the oath of office, for the violation of which the notary would incur no temporal penalty, for the customary oath in Court, which, if corruptly taken, will, every one knows, render the witness obnoxious to the penalties annexed to the crime of perjury. The degree of sanction, therefore, being greater under the judicial oath, it may reasonably be inferred the Legislature never intended that the officer should authenticate, by his certificate of protest, what he would not be permitted to state in the ordinary mode of attestation. It is agreed, on all hands, that the protest is not conclusive. Here, the very officer who made it, being called to give explanatory evidence, informs the Court, that, personally, he knows nothing of the matter ; that he derived all his information from his'son, who attended to the whole business for him, who wrote the'protest, and who merely informed him *330 that he had given the notice as stated in it; and on this it is urged to the Judge that the protest, thus explained to be an assertion of the fact on no better ground than hearsay, does not continue to be legal and competent evidence of the fact asserted; and he instructs the jury that it does. Now put the case of a witness who has, in his direct examination, sworn positively to a fact, but from whom, on being cross examined, it comes out that he personally knows nothing about the matter, having obtained all his information from a person on whose veracity he thinks he can depend ; ought not the Court to direct the jury that.the whole of his evidence, taken with the explanation given, is incompetent, and to go for nothing ? The mind is somewhat puzzled in viewing this as a parallel case, by considering the possibility of the officer having sworn falsely, and that his protest might be competent in contradiction of his parol evidence. In that point of view, it undoubtedly would ; but was that the decision of the Court ? The direction of the Judge is to be taken in reference to the subject matter of the question submitted, which was, not whether the plaintiff should be precluded from setting up the protest as true, in opposition to the notary’s parol evidence, but whether the explanatory effect of that evidence, hypothetically assuming it to be true, was not, in point of law, to destroy the competency of the protest. A witness stating, in his cross examination, that the facts he had detailed were given at second hand, may also deviate from the truth ; yet the effect of his cross examination on the competency of his direct evidence will, like the effect of the parol evidence on the competency of the protest in the case at bar, present distinct questions, as it is viewed as a true explanation, or as a perjury ; and what would be a proper answer to the one, would be error if given to the other. The counsel could go to the Court only on a question of law ; for a question of fact, involving the truth .of the parol evidence, was exclusively for the jury. The question was, as to the legal operation of the facts, admitting them to be true ; for it did not require a decision to establish the position that they ought to have no effect if they were untrue. The Judge himself thought he was deciding on the legal effect of the facts; else why talk of giving the counsel an opportunity to except, which he knew they could not do'for error in matter of fact. Here the notary had thought himself authorised to entrust *331 the active part of the business to his son, whose acts he thought he was justifiable in adopting, and having declared this on oath, the question was, not whether.it was contradiction of the protest, but, what was its effect as explanation. I think, therefore, I am not deceived when I suppose the Judge meant, and the jury understood, that the assertion of notice in the protest, though founded on hearsay, and, therefore, not competent when coming from a witness deposing in the •ordinary way, was, nevertheless, competent evidence of the fact asserted, by force of the act of assembly. But the Legislature surely never intended to permit an officer to authenticate by his certificate, a fact to which he would not, after being'examined touching his means of knowledge, be permitted to swear, otherwise they would not have made the protest merely prima facie evidence, but conclusive. Now, if the protest is still to be evidence after it has been disproved, it must be because it is to have some operation,' and that, too, contrary to the truth of the fact: but that is precisely the character of conclusive evidence,'which the Legislature were careful not to impart. It is not claimed. How, then, can it be competent evidence, and yet have no legal effect irí proving the fact, of which it is said to be evidence ? Can it be that delivering a notice to a messenger, like putting a letter into the post-office, where the parties do not live in the same town-, is constructive notice, whether it be actually received or not ? That would bring out the same result as if the protest were conclusive ; for constructive notice has nothing to do with the truth of the case. In rejecting the protest for irregularity of the officer, there is no hardship on the holder, for he may either give the notice himself, or use the notary as an instrument; and if, for the sake of convenience, he resorts to the latter, it is better he should suffer by the negligence of his own agent, than a person who had no concern in selecting him. There is nothing to induce a suspicion that the’ Legislature knew of, much less that they intended to sanction the loose practice of the notaries in this particular. The confidence supposed to. be reposed in the truth and integrity of those officers by the executive who appointed them, is the ground on which the Legislature rested the substitution of their certificate, for the ordinary judicial evidence of the facts asserted in it; and it therefore, never could have intended to permit them to delegate this high personal trust *332 to a stranger acting without oath or even official responsibility. The enabling provisions of the act are, in truth, very scant, and reach a case of this kind only by construction; and although I perfectly coincide in the propriety of this construction, yet, as the introduction of the protest as -evidence at all, is an extraordinary interposition of official power, I hold the notary competent to certify only what he personally knows to be true, and not what he may conjecture to be so, from the relation of others. I am for reversing the judgment.