By the Courts Nelson, Ch. J.
I think the form of action adopted was proper, and may be maintained upon principles already settled and repeatedly acted upon by this court. In Wilmarth v. Crawford, (10 Wend. 343, et seq.) we held, that debt would lie by an endorsee against the maker of a note, on the ground that, since the statute making promissory notes negotiable, the money payable thereby became, by virtue *55 of the transfer, due and payable to the endorsee or holder ; and that, in judgment of law, privity of contract—the absence of which has always constituted the main objection to this form of action—existed between the parties. The same general principle had been before decided in Pierce v. Crafts, (12 John. R. 90.) That was an action of assumpsit by the endorsee against the maker of a promissory note, and the question was, whether the note was admissible evidence under the money counts. The argument against its admission was, that indebitatus assumpsit would lie only in cases where debt might be brought, and that the latter could not be maintained for want of privity of contract. The court answered, that since the statute of Jlnne there was a legal privity of contract between the maker and endorsee of a negotiable note; that it was a contract on the part of the former to pay the money to whoever might become entitled to it by transfer; and that such privity commenced, by operation of the act, as soon as the bearer became so entitled. This view is equally applicable to the parties before us; for, by the endorsement, the defendant undertakes to pay the note to the immediate endorsee, or to any other party to whom it may be transferred. On this ground, a blank endorsement may be filled up with the name of the holder, the same as if the contract had been made directly between him and the endorser; and this, though the latter be ever so remote a party. The case of Stratton v. Hill, (3 Price, 253,) was an action of debt by the first endorsee against the endorser. There, it is true, there was privity of contract in fact between the parties; but upon the principle of Pierce v. Crafts, this privity is carried forward to any other assignee or holder. (See also Hodges v. Steward, 1 Salk. 125 ; Priddy v. Henbrey, 1 Barn.& Cres. 674, per Bayley, J.)
The next question is, as to the sufficiency of the notarial certificate. It is objected, the certificate does not show that the notary himself made the demand, as it merely states that he caused the note to be presented for payment; and that it does not state the note to have been presented at the Com *56 mercial Bank, Mirny, where it was payable, but only at the Commercial Bank.
The fair inference to be drawn from the language of the certificate is, that the note was presented by the clerk of the notary, or some third person; as otherwise the phraseology would have been direct, that he (the officer) made presentment, &c. j and the material question is, whether the duties of the office can be thus performed by a clerk or deputy. Mr. Chitty, in the 7th edition of his work on bills, &c. (Chit, on Bills, -217,) intimated an opinion that presentment of foreign bills should be made by the notary himself, because he was a public officer; and that the power could not be delegated. He cited a dictum of Buller, J. to that effect in Leftley v. Mills, (4 T. R. 175.) This drew out a correspondence on the subject between Mr. Chitty and an association of notaries in Liverpool, which is given at large in a note to the eighth edition, at page 493. He there adheres to his former opinion, notwithstanding the strong remonstrance of the notaries.; and I think sustains it, if not upon authority, at least with reasons that are cogent and conclusive. He observes : u if this formal act can be delegated to a clerk, (who, perhaps, has not been a month in the office of the notary,) all the regularity and security incident to the office of a notary would be defeated.” “ It may be very material, especially in the case of foreign bills, that the demand, and account of the particulars of the refusal, and reasons assigned for non-payment, should be made by a person of known experience : a proper demand may be essential to obtain payment, and a proper account of the reasons for refusal to accept or pay, may be very material to forward to the foreign country, in order that the proper steps may be taken.” He states the fact also, that in all foreign countries, the demand and protest must be made by the notary himself, or some public officer, or by two reputable inhabitants. In respect to inland bills, Mr. Chitty refers to the act of 9 and 10 Wm. 3, ch. 17, which first provided for the protest of this description of paper, and which directs that the holder or his agent may cause the bill to be protested by a *57 notary, and in default of such notary by any other substantial person in the place, in .the presence of two witnesses. The act also prescribed the form of the protest, which, as will be seen on a reference to it, contemplates a demand by the officer himself. (Chitty on Bills, 8th Lond. ed. p. 495, 500,(a))
It will also be seen that our act of 1833, (Sess. B. p. 395, § 8, 2 R. S. 212, § 46, 2d ed.,) which enlarged the powers of the notary, is very explicit in this respect. The language of that statute is, “ the certificate of a notary under his hand and seal of office, of the presentment by him. of any promissory note or bill of exchange for acceptance,” &c.—obviously contemplating and requiring the act to be done by the officer himself, and not by a clerk or third person. In the case of Vandewall v, Tyrrell, (Mood. & Malk. 87, more fully reported in Chitty on Bills, 8th Bond. ed. p. 495, note,) before Lord Tenterden, it appeared that a clerk presented the bill, and afterwards drew up the certificate of protest, which was signed and sealed by his principal in the usual form. The chief justice, in strong terms, said it was a void protest—that it was a false certificate—that the notary had signed a paper stating,u I presented and demanded,” &c., when it appeared in evidence that only his clerk had presented the bill, and he himself knew nothing of the presentment—that he had certified a falsity. Accordingly, the plaintiff was nonsuited. (b) ¡Now, although this cen *58 sure may not be applicable to the conduct of a notary who certifies that he caused the bill or note to be presented, as it cannot he said that he certifies to a falsehood, yet all the reasons given by his lordship for so strongly reprobating the practice, apply with equal force and cogency against admitting in evidence the certificate in this case. Here the notary certifies to facts of which he, impliedly at least, concedes upon the face of the instrument he has no personal or official knowledge ; facts to which, according to his own statement, he *59 would be an incompetent witness to testify if called upon the stand in the trial of the cause, as it is but hearsay evidence at most. For these reasons I am satisfied the certificate in question was properly rejected.
I think the second objection taken to the certificate is untenable. The officer certified that he caused the original note, “a copy of which is on the other side written,” to be presented at the Commercial Bank—referring undoubtedly to the bank designated in the note ; as distinctly so, as if the body of the note had been incorporated into the certificate.
New trial denied.

 See also 10 Pick. Statutes at Large, p. 141.

 The same question arose in Stewart v. Allison, (6 Serg. & Rawle, 324.) On the trial of that case in the district court of the city and county of Philadelphia, it appeared that the protest was made by the notary under his official seal, in which it was stated that he had given notice of non-payment to the endorser, (the defendant.) The notary, however, testified that the protest was in his son’s handwriting—that he did not give the notice himself—that his son attended to this business for him—that he had no knowledge of the notice having been given except from what his son had told him ; and that this had been the practice of doing business among the notaries. The statute of Pennsylvania declared that the official acts, protests, &c. of notaries, certified under their seals of office, might be read in evidence; but provided that any party might contradict the certificate, by other evidence. The court charged the jury, “ that there was *58 evidence of notice, namely, the said protest, notwithstanding the explanation, of which the jury were to judge.” The verdict was for the plaintiff, and the judgment thereon was affirmed by the supreme court on error, Gibson, J. dissenting. The ground upon which the affirmance was placed by a majority of the court was, that evidence upon the question of notice had been given on both sides, and that the finding of the jury should not, for that reason, be disturbed. Tilghhan, Ch. J. observed that, “ in this case the official protest of the notary had been given in evidence by the plaintiff, and parol evidence had been given by the defendant of certain things, tending, in his opinion, to take off the effect of that certificate. Who then was to judge between these two pieces of evidence ? Certainly not the court, but the jury. It was very possible that the jury might give more credit to the official certificate than to the oath of the notary. A notary may be tampered with after giving his certificate ; or the jury might think that the certificate and the parol evidence were not inconsistent.” Duncan, J. said: “ The notarial certificate is made evidence—it may be disproved; but the jury were the proper judges whether it was so, or not. An officer impeaching his own official act, the jury might not fully believe j they might weigh his particular account on oath, against the official document under his seal; he might be mistaken after the lapse of many years; he might confound one transaction with another."
Thus it will be seen, the court did not affirm that a notary may depute an agent or third person to discharge his official duty; but the case turned upon another point—a question of fact, viz: the credit due to the explanatory testimony of the notary—and the decision is not at all at variance with the doctrine of the principal case. That this is so may be further, seen by the dissenting opinion of Gibson, J. who differed from the other members of the court mainly on the construction to be given to the judge’s charge, which, he contended, went the length of directing the jury that, even should they believe the notary’s testimony, still the assertion of notice in the protest “ was competent evidence of the fact asserted, by force of the act of assemblyand this, he held1, was clearly erroneous.