# Ellis's Administrator, Appellant, *v.* Commercial Bank of Natchez.

Where the law has been already correctly stated to the jury, the court may refuse a charge which is not clearly applicable to, the proof in the cause.

If the holder of a bill places the notice of protest in the proper post-office in due time, it is legal diligence, and he is not responsible for the irregularities of the mail.

The doctrine is well settled, that an agent of the holder is allowed one day to give notice to his principal of a default, and the principal is entitled to one day after he receives notice, to give or forward notice by mail to the drawer or indorser.

Demand and protest must be made according to the laws of the place where the bill is made payable.

Demand is not good unless made by the notary himself.

Where the dwelling house or place of business of the drawer of the bill is shut up, it seems, according to the weight of authority, there must be inquiry in the neighborhood, in order to excuse presentment.

APPEAL from the circuit court of the county of Adams.

Action of assumpsit against Thomas G. Ellis, as indorser of two bills of exchange of Francis Routh, one drawn in Natchez on W. W. Swaim & Co. and accepted by them for five thousand dollars, dated November 26, 1836, and payable four months after date; the other drawn on John L. Swaim, and accepted by him, dated January 16, 1837, and payable ninety days after date, for two thousand dollars.

Plea, the general issue.

Upon the trial of the cause, the plaintiff below read in evidence to the jury the bills of exchange sued on, with the indorsements; the deposition of Jules Mossey, taken on commission, which stated that he presented the bill of exchange for five thousand dollars for payment on the 29th of March, 1837, and demanded payment at the counting house of the acceptors, and being refused, he protested the same on the same day, made out the usual no-

tices of protest to the drawer and indorsers, and enclosed them to Thomas Henderson, Natchez, on the same day; also the deposition of George Heyl, taken on commission, stated, that he did protest the bill for two thousand dollars for non-payment, the 19th of April, the day the note fell due; that he went to the counting house of John L. Swaim to demand payment, and found no person there, and the counting house closed; that he notified the indorsers on the same evening by enclosing the notices to Thomas Henderson, Natchez, and that he is a notary public.

Plaintiffs below then read in evidence to the jury with consent of defendant's counsel, a writing purporting to be the notice sent by Jules Mossey, notary public, to Thomas Henderson, cashier, dated 29th of March, 1837, of the dishonor and protest of the bill of five thousand dollars for non-payment, which notice was postmarked AP. 3.

Plaintiffs then introduced as a witness Elijah Peale, whose name appeared on said notice, that in the above described notice, which appeared to be postmarked as mailed in New Orleans, April 3d, were enclosed other notices to the indorsers, that Peale served one of said notices signed by Jules Mossey, by leaving the same on the day it was received at Natchez, at the residence of said Ellis. Witness could not state whether the notice served on Ellis was an exact copy of that sent to Henderson; could not say whether the notice served did not differ from that received from said Henderson, in setting out the day on which said bill was protested. Witness also proved that the postmark on the notice to Henderson was the New Orleans post office, April 3.

Defendants then read to the jury the deposition of D. L. McKay, a witness on commission, who stated that Jules Mossey was absent at the time of taking his deposition, in France, and would be absent some months, and had left his notarial records in the custody of witness; that on examining them it appeared that said Mossey did not protest more than one bill of exchange during the month of March, 1837, drawn by Francis Routh upon and accepted by W. W. Swaim & Co., dated the 26th of November, 1836, indorsed by said Ellis for five thousand dollars.

Defendants then read in evidence the deposition of the aforesaid George Heyl, taken on commission, who stated that he protested

the said draft of Francis Routh for two thousand dollars, on the 19th April, 1837. Either he or his clerk, he is not certain which, went to the counting house of John L. Swaim, and found it shut up, and no person there to answer for the payment of the bill of exchange; that he then filled up the usual printed notices addressed to the drawer and indorsers, which were enclosed and addressed to Thomas Henderson, Natchez, Mississippi. That his clerk deposited them in the Philadelphia post office on the evening of the 19th of April, 1837; the memorandum to that effect appeared on his record.

Defendants then read in evidence a notice of the protest for non-payment of a draft drawn by Francis Routh on W. W. Swaim & Co. in favor of Thomas G. Ellis, dated 26th March, 1837, for five thousand dollars, directed to Tho's G. Ellis, and signed in the hand-writing and signature of Jules Mossey, the notary alleged to have protested the draft for five thousand dollars, in the first count of plaintiff's declaration, and the deposition of said Mossey before referred to; which notice was dated the 26th March, 1837, directed to Thomas G. Ellis, and stated that the draft of Routh, described in the first count of the declaration, for five thousand dollars, dated 26th November, 1836, was, on said 26th March, 1837, protested for non-payment, and that the notice was addressed to Ellis in the hand-writing of witness, Peale; and Peale being again called, stated that this notice may have been the same served by him as before stated, but could not say whether it was so or not, and that he did not recollect of having delivered more than one notice for said bill at the residence of said Ellis.

The counsel of defendants below, among other instructions as to the first count of the declaration and the proof to support, asked the court to charge the jury "that the post-mark on the envelop is evidence of the time when notice was mailed in the post office;" "that if the jury find the bill for five thousand dollars belonged to the Commercial Bank of Natchez, and was sent by it to New Orleans for collection, and there protested, it was the duty of protesting notary to address notice directly to the indorser at his place of residence." Which instructions court refused, and points reserved.

Ellis's Administrator, Appellant, *v.* Commercial Bank of Natchez.

Defendants' counsel asked court to instruct as to second count in plaintiff's declaration, and the evidence—that the demand must be made by the notary, and not sufficient by his clerk; that proof that demand was not made because the place of business of the acceptor was shut up, does not prove sufficient demand or due diligence, unless further proof that place of business was only closed for the time being, and not permanently closed; that it is not sufficient in law to charge indorser, nor sufficient proof of diligence merely to prove the shutting up of the house of the maker of a note not payable at a particular place, but it ought further to be shown that inquiry has been made after maker, or an attempt to find him out.

These instructions were refused, exception taken, bill of exceptions, embodying all the testimony, and the instructions refused, as well as others granted.

QUITMAN and McMURRAN for plaintiff in error.

1. The notice of the protest of the bill for five thousand dollars, that it was protested on the 26th March, the notice itself dated on that day, was no notice in law to Ellis. If the bill had been actually protested on the 26th, the protest would have been a nullity; and notifying an indorser that it was done on that day, was equally a nullity. We know a misdescription, or mistake in the description of the bill, would not vitiate the notice, so that it was sufficient to make known to the indorser the bill intended to be described. But this is notice of a demand at a time when the note was not due., Notice of the particular time and place of demand must be correct to be binding. 11 Wheat. Rep. 431.

2. The court's refusal to instruct the jury that the post-mark of the New Orleans post office, as proved, was evidence to the jury of the time when the notices were enclosed. Surely it was for the jury to consider whether this post-mark was not satisfactory to them as to the mailing of the notices. But the court instructed the jury that it was no evidence of the fact, after it had been read in evidence to them.

3. The court's refusal to instruct the jury that the business house of the acceptor being shut, at the time the bill was carried there for demanding payment, and no further inquiries made or

diligence used or fact stated, was not a sufficient demand of payment of the note, was clearly erroneous. See 2 Strange, 1087; 1 Pick. Rep. 413.

4. It was unquestionably error in the court below to refuse to instruct the jury that the demand of payment of the bill of two thousand dollars must be made by the notary, and that proof that it was made by his clerk was not sufficient. This was a foreign bill of exchange, drawn in Natchez, payable in Philadelphia. No one but a notary public could protest it, and of course no one else could make a legal demand. To say that a clerk might demand, and a notary protest, is to allow the notary to state a deliberate falsehood in his solemn protest, for he states *he* demanded payment, &c. The clerk is not a sworn officer; he could make demand or not; and the latitude that would be given, if the charge of the court were sustained upon this subject, would be unlimited, and subject to every possible abuse. Our statute, and those of the other states, provide that a justice of the peace may protest, &c. where there is no notary; and we think this court will require to be shown some express legislation before they decide that a mere clerk can do the most important part of protesting, making the demand, without which a protest is idle.

But, as this court has decided directly on this point, and, as we believe, upon sound principle and authority, we would deem it an act of supererogation to do more than simply refer to the decision. 4 How. 569, Carmichael *v.* Bank of Pennsylvania; Chitty on Bills. And as this instruction was pertinent to the issue and testimony, and was refused, we deem this point of itself decisive.

McDonald and Matthewson, for defendants.

The first error assigned by the plaintiffs in error is, that the court below erred in refusing to give the several instructions asked for by the defendant's counsel below. The instructions being as follows:

2. That the post mark on the envelop is evidence of the time when notice was mailed in the post-office.

4. That if the jury find that the bill for five thousand dollars was the property of the Commercial Bank of Natchez, and was sent to New Orleans for collection by said bank, and there pro-

tested, it was the duty of the protesting notary to address notice directly to the indorser at his place of residence.

6. That the demand must be proved to have been made by the notary; proof of demand made by the clerk is not sufficient.

7. Where the proof is, that payment of a bill was not demanded because the place of business of the acceptor was shut up. Such evidence does not prove a sufficient demand or due diligence to make a demand of payment, unless there is further proof that such place of business was only closed for the time being, and not permanently closed.

8. That it is not sufficient in law to charge an indorser, nor sufficient proof of diligence on the part of the holder and notary, merely to prove the shutting up of the house or place of business of the maker of a note not payable at a particular place; but it ought further to be shown that inquiry had been made after the maker, or an attempt made to find him out.

Perhaps the best reason for the court below refusing to give the instruction marked " 2nd," is its ambiguity. If the defendant's counsel meant by it that the post-mark on the envelop was evidence when the notice was deposited in the post-office, certainly the court did not err in refusing to give such an instruction, because the law only makes it the duty of the notary to deposit a notice in the post-office in time to go out by the first mail on the day succeeding the day on which the note or bill was protested. Bayley on Bills, 262; 17 Mass. Rep. 449; 6 Wheaton, 104. See also 20 Johns. Rep. 146; 1 Miller, 122. And sending notice by mail is sufficient, though it be not received. Bayley on Bills, 275. Certainly, then, if the notary swore that he did place the notice in the post-office on the day succeeding the one on which he protested the bill, it was all that the law required, and if through the neglect of the postmaster, or the irregularity of the mails, the notice had not been sent or received in due time or even not at all, it was no fault of the notary; and while his character remained unimpeached, the court could not permit his testimony to be attacked by such collateral and flimsy evidence as the mark of a postmaster. No court could instruct the jury that a post mark is *per se* evidence of the time when the notice was put in the office, when the notary swears that he put the notice in the office at a

certain time, four days previous to the post mark, and his character is unimpeached. If the defendant's counsel below meant that the post mark was evidence of the time when the notice left the post office for Natchez it was entirely irrelevant, and we will notice it no farther.

With regard to the fourth instruction, see Bayley on Bills, 267, 269; 5 Mass. Rep. 167; 5 Mason, 367; 3 Pickering, 180; 2 Johns. Cases, 1.

The opinion of the court below with regard to the instruction marked "6th," is fully discussed in Chitty on Bills, ed. of 1836, 493, 494, and authorities there cited. *Ib.* 9th Am. ed. 398.

The decision of the court in overruling the instructions marked "7th and 8th," is sustained by reason and authority; for it is settled that a presentment at a maker's place of business is sufficient, if made in business hours, even if it be shut and no person left there to answer inquiries. Bayley on Bills, 199; 1 Pick. 413.

The second assignment of error, that there was no legal proof of the protest of the bills of exchange, is answered, we think, by the facts appearing upon the face of the record. It appears then that the notaries presented the bills at the proper place and at the proper time for payment; that in each instance payment was refused; whereupon they protested the said bills, and sent the notices to Natchez by mail, under cover to Thos. Henderson, the cashier of the Commercial Bank of Natchez; one notice was deposited in the post-office in time to go out by the first mail that left on the day next succeeding that on which said bill was protested; the other on the evening of the same day that it was protested; and the witness Elijah Peale testified that he delivered the said notices to Thomas G. Ellis, in his life-time, at his residence, on the same day the notice was received in Natchez. This certainly, as long as it remained unimpeached, is proof of the legal protest of the bills sued on in the court below. The counsel for defendants below, however, endeavored to impeach the testimony of Jules Mossy, the notary who protested the bill for five thousand dollars, by reading in evidence a notice purporting to be the notice served on said Ellis of the protest of said bill. The bill fell due on the 29th of March, and the notice was dated the 26th of March, and stated that said bill was protested on that day. The principle that an

error in the date of a note, or when it fell due, the maker's name, or the amount of the note, does not affect the liability of the indorser, or the legality of the notice to him, if the note be so described that the indorser could not be misled by it.   Bayley on Bills, 254; 11 Wheat. 431; 12 Mass. Rep. 6; 2 Johns. Cases, 337; 3 Wend. 456; 9 Wend. 279; 1 Pickering, 401.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action of assumpsit, brought against the appellants by the appellee, upon two bills of exchange, indorsed by their intestate.   One of these was for five thousand dollars, payable in New Orleans; the other was for two thousand dollars, payable in Philadelphia.  Several questions applicable to each of these separately, grow out of the instructions asked of the court.   Those in regard to the larger bill, will be first considered.   The defendants by their counsel asked the court to instruct the jury "that the post-mark on the envelope is evidence of the time when notice was mailed in the post-office."   This the court refused to do.   A charge had been before given at the request of the plaintiff, and without exception on the part of the defendants, that "if the notary put the notice in the New Orleans' post-office on the day or day after the bill was protested, he discharged his duty; and the fact that it was detained in the post-office there, does not discharge the indorser."   The testimony of the notary was, that he had placed the notice in the post-office at New Orleans, on the day of the protest of the bill.   If by the term "mailed," as used in the charge asked for, is meant the time when a letter is started from the office in which it is deposited, the instruction was correctly refused, because that is not the point of enquiry, and in a case like this, it was a mere abstract proposition.   If the holder of a bill places the notice of protest in the proper office in due time, it is legal diligence, and he is not responsible for any defects in the regulation of the mails, or for the time which elapses from its deposit in the office and its delivery.   Dickens *v.* Beal, 10 Peters, 579.   But if by that term was meant the time when the letter was deposited in the office, it was not evidence of that fact, except by inference and presumption.   In the charge given at the instance of the plaintiff, the jury had been told at what time the letter must

26*

be put in the office in order to render the defendant liable; they had the letter and post-mark before them, as well as the evidence of the notary, and it was for them to decide upon the whole testimony. The charge asked by the defendant would seem intended to exclude other evidence, and to make the post-mark the sole proof of the fact. For the reason that a correct charge had already been given, the one under consideration was properly refused.

The next ground of exception grows out of the refusal of the court to charge the jury " that if the bill was the property of the plaintiff, and was sent to New Orleans for collection, and there protested, it was the duty of the notary to address notices directly to the indorser at his residence." The doctrine is well settled, that an agent of the holder is allowed one day to give notice to his principal of a default, and the principal to one day after he receives the notice, to give or forward notice by mail to the drawer or indorser. 3 Kent, 108; 4 Yerger, 265; Colt *v.* Noble, 5 Mass. United States Bank *v.* Goddard, 5 Mason. There is no distinction as to the point of notice whether the party who causes the bill to be protested be a holder in his own right, or in right of another. This charge was therefore correctly refused.

The other charges asked for by the defendant in reference to this bill were given by the court; and as they were not excepted to by the plaintiff, it is not necessary for us to pass upon them. The facts out of which those charges grew were no doubt considered by the jury to be in favor of the plaintiff.

This disposes of the points in regard to the larger bill, and there is no error injurious to the appellant, or of which he can complain so far as that bill is concerned.

The first instruction asked by the defendant as to the other bill, was, " that the demand must be proven to have been made by the notary; proof of demand made by the clerk is not sufficient." This was refused. The evidence left it in doubt by whom the demand was made; the point was therefore material. The court erred in refusing to give this charge : the bill being a foreign one. Carmichael *v.* Planters' Bank, 4 How. 567. The statute likewise contemplates that the duties of the notary should be performed by him in person, and that his certificate should rest upon his own

knowledge, not upon information furnished by others.  How. & Hutch. 373.

If in this case the demand and protest should be made in accordance with the laws of Pennsylvania, because the bill is made payable there, the laws of that state in that particular are like our own, so far as we have any information.  See Stewart *v.* Alison, 6 Serg. & Rawle, 324; 8 Watts, 401; Chitty on Bills, 489.

The only remaining question is, whether the act of the notary or his clerk amounted to a demand, or furnished an excuse for the want of it.  The proof is that "he went to the counting house of the acceptor, found it shut up, and no person there to answer for the payment:" the bill was then protested.

In nearly all the cases which we have been able to find on this point, after a very diligent search, the evidence shows that enquiry was made in the neighborhood for the maker or acceptor, when he was not found at his dwelling or place of business, and thus an excuse for want of personal demand is furnished.  3 McCord, 394; Shed *v.* Brett, 1 Pick; Hine *v.* Alley, 1 Nev. & Man. 433; Bayley on Bills, 198; Chitty on Bills, 398.   In Collins *v.* Butler, 2 Strange, 1087, it was held that finding the house shut up, was not in itself a sufficient excuse for want of presentment.  See also the case of Stewart *v.* Eden, 2 Caines.   But as this case will be reversed upon another ground, it is not necessary for us now to decide this point, we therefore withhold the expression of any opinion upon it.

For the error in refusing to charge that the plaintiff must show that the demand was made by the notary himself, otherwise his protest is not evidence of the demand, the judgment will be reversed.

Judgment reversed and new trial awarded.