# Jenks *against* The Doylestown Bank.

The notary's protest of a promissory note is *primâ facie* evidence of the fact of notice to the endorser of non-payment, when recited in it; and such notice is sufficient if duly sent, though not received by the endorser.

The protest of a notary is not invalidated by the fact that the seal does not conform in all respects to the Act of 1791.

Where a note is payable at bank, and the endorsee is there ready to receive payment, no further demand is necessary to charge the endorser.

THIS was a writ of error to the Court of Common Pleas of *Bucks* county.

It was *assumpsit* brought by the Doylestown Bank of Bucks county against Phineas Jenks, on a promissory note, dated 2d of October 1837, drawn by Chapman Buckman to the order of Phineas Jenks, and by him endorsed, for the payment of $250 in 60 days after date, at the Doylestown Bank of Bucks county. The plaintiff read in evidence the note, and then offered a protest thereof, dated 4th of December 1837, made by M. H. Snyder, notary public, certified under his seal, (being a stamp instead of a seal); to which the defendant objected, because it did not appear to be under the seal of office of the notary; but the court admitted it, and sealed a bill of exceptions.

The plaintiff then called M. H. Snyder, who swore he was a notary public in December 1837; that it was his notarial seal to the protest, and was attached at the time the protest was made out.

The protest certified that at the request of the Doylestown Bank, he had exhibited the original promissory note to Daniel Byrnes, Esq., cashier of said bank, and received for answer there were no funds to meet the payment thereof, and that he had notified the drawer and endorser by mail of the non-payment of the said note.

On cross-examination, Mr Snyder stated in substance that the protest was executed, he presumed, the day it purported, 4th of December 1837; but he had no recollection except from the paper. He had no particular recollection of having given notice to the

drawer and endorser in this instance, or whether he put in the letters to them himself or sent them by another person; but he repeatedly stated he had no doubt he notified them as stated in the protest, because it was his practice to make out the notice when he made out the protest, and he would not have certified unless the facts were true. He knew Dr Jenks resided at Newtown, and always directed letters to him there. He kept no register, but only a copy.

The plaintiff then proved by Byrnes, the cashier, that neither C. Buckman nor the defendant had funds in the Doylestown Bank on the last day of grace, or the day before, or after, to meet the note; that he had the note on the 4th of December 1837, ready to receive payment.

The defendant then called Snyder, the notary, who swore that the note was handed to him on the 4th, (Monday). He generally called within banking hours, took the notes, protested them, and called at the bank next morning with the note and protest, and on learning there were no funds, left the note and protest at the bank. He got this note, he thought, on the 4th, protested it, and returned it to the bank next morning. He forwarded notices before he made the demand. He never made the demand on the day the note was given to him; he first protested it, and then made demand, and handed over the protest. He generally made out the notices when he made the protest. On several of the points, however, his evidence was confused and obscure.

The defendant then further called R. C. Nagle, who was postmaster at Newtown in December 1837, who stated from his book of accounts that the first letter Dr. Jenks received in that month was on the 12th, though the account of that letter was in the handwriting of his daughter, then an assistant clerk, since deceased. He had no doubt, if any had come for Dr. Jenks between the 1st and 12th, it would have been entered. The mails arrived from Doylestown Tuesday, Thursday, and Saturday, from 8 to 9 o'clock, leaving Doylestown at 5. The defendant then called the postmaster at Doylestown and his deputy, to show the entries of letters sent to Newtown. The latter stated that no letters were sent there on the 5th, one on the 4th, none on the 6th or 7th, one on the 8th and 9th, one on the 13th. Another deputy testified that the entries would be made the date the mail went to Newtown. A letter left on the 4th would be mailed on the 5th.

Other witnesses were examined by the defendant, whose testimony it is not material to state. The defendant put several points which are sufficiently specified in the charge of the court.

The court charged the jury as follows:

This is an action on a promissory note, drawn by Chapman Buckman, on the 2d of October 1837, to the order of Dr. Phineas Jenks, payable in 60 days, at the Doylestown Bank of Bucks county, and endorsed by Phineas Jenks. The plaintiff has shown that this

[Jenks v. The Doylestown Bank.]

note was protested for non-payment on the 4th of December 1837. This was the last day of grace. The first objection is to the protest; that it does not purport to be under the hand of the notary and his notarial seal. The protest has the seal of the notary. He swears that it is his notarial seal. We think this on the face of it is a good protest, and so instruct you. The protest declares: "At the request of the Doylestown Bank of Bucks county, he exhibited the original promissory note to Daniel Byrnes, cashier of said bank, and received for answer, ' there were no funds to meet the payment thereof.' Whereof the following is a true copy, (filling out a copy of the note). The notary further, in his protest, declares: " And I have also notified the drawer and endorser, by mail, of the non-payment of the said note." The Act of 2d of January 1815, declares: the official acts, protests and attestations, of all notaries public acting by the authority of this Commonwealth, certified according to law, under their respective hands and seals of office, may be read and received in evidence of the facts therein certified in all suits that now are or hereafter shall be depending: Provided, that any party may be permitted to contradict by other evidence any such certificate. The protest is first evidence in this case of the facts contained in it, and if the case had rested on this, the plaintiff would have been already entitled to your verdict. But the notary has been called and examined. You have heard his evidence. We will not recapitulate it all. We think that you will find that he swears his general practice was to call on the bank on the last day of grace, to receive from the cashier any notes due and unpaid; that he took the notes to his office; next day made out the protest and notice; returned the note and protest to the bank; made a demand of payment. Either took or sent his notice to the post-office. When he sent his notices to the post-office, he had no knowledge that they were put in, unless the person reported that he had put them in. Now, according to his practice, when he did not put the letters in, he had no knowledge whether the letter was or was not put in the post-office. If his letter had been put in according to his practice, it would have been on the 5th. No letter is mailed on that day, nor from the 4th to the 8th. And you have the evidence of Nagle, that he received no letter for Dr. Jenks at Newtown, from the 1st to the 12th of December 1837. Of this evidence you are the judges, and it certainly goes (if believed) to show that no letter was put in the post-office at this place on the 4th, 5th, or 6th of December 1837. If no notice was put in the post-office directed to Dr. Jenks, he is not liable as endorser. Notice is necessary and essential of non-payment of the drawer to charge the endorser, and that notice must be given with due diligence.

This brings us to the consideration of the first point made by the defendant, viz: that no notice is proved to have been given to the endorser, the defendant, of the non-payment of the note by the

[Jenks v. The Doylestown Bank.]

drawer which will enable the plaintiff to recover, and that the
verdict must be for the defendant. This is asking the court to
take the facts and evidence from you. Now, as the evidence is
not exactly in one way, we have no right to take it from the jury,
but to submit the whole evidence to you with proper direction.
In *Gurly* v. *The Gettysburg Bank*, (7 *Serg. & Rawle* 324), the
Supreme Court declared, that no general rule can be laid down
by the court on the subject, and that the reasonableness of notice
to an endorser of the non-payment of a promissory note, is a ques-
tion of fact to be submitted to the jury; and in that case the note
was not protested for five days. At this day, when we have such
facilities by mail, five days would be too long. But here there is
a protest on the last day of grace. The protest was in time. He
was bound to give notice, and notice in a reasonable time. Did
he do so? And the ascertainment of this fact depends on the whole
evidence relating to it. The mail went on Tuesday, Wednesday,
and Thursday. The protest was on Monday. Monday was the
4th, Tuesday was the 5th, Wednesday was the 6th, Thursday was
the 7th. And as the mail went by 4 o'clock on Tuesday, I would
submit it to the jury whether a notice given which went by mail
on Wednesday, was not a reasonable notice; beyond this, as a
matter of law, we would say it was too late. But was any notice
sent either on Tuesday or Wednesday? and that is a question of
fact for the jury. If it was put in the office in time to go on
Tuesday, it would be clearly in time. We incline to the opinion
it would be in time to go on Wednesday. But that we would
leave to the jury to determine in the country, to say whether it
was reasonable notice. When the notary is examined, he ought
to be able to prove distinctly when and how he put it into the
office; and if he fails in this, the proof will be insufficient, and
this on the authority of *Weakly* v. *Bell & Sterling*. Now, Mr
Snyder has no recollection of this notice in particular. He has
sworn to his general practice, either delivering the notice himself
or handing his notices, like his other communications, to any per-
son going in the direction of the post-office. Take this practice in
connection with the post-office books. We submit it to you whe-
ther it does not destroy the *primâ facie* evidence created by the
protest. We think Mr Snyder's practice was bad and insufficient.
If you believe the notice was given in the manner he swears, it
tends to destroy the assertion in his protest, that he gave due no-
tice to the endorser.

The defendant's 2d point is, " a written or printed notice of the
non-payment by the drawer must be clearly and positively proved,
if sent by mail, to have been sent by the first mail to the endorser."
The opinion given fully embraces this point: 3. " If such notice
is sent by a notary, it must be in his official character; and if the
notice is sent, it must be under his hand and seal of office." 4.
" The notice, if sent by a notary, must at least be signed by him-

[Jenks v. The Doylestown Bank.]

self. His name printed, as in the form produced as that which
the notary used, if he used any, is insufficient." To these two
points we answer that the law does not prescribe any form of
notice. But it is not necessary that it should be under his notarial
seal, and that such printed form of notice is sufficient.  5. "The
burthen of proof of notice of non-payment by the drawer to the
defendant lies upon the plaintiffs in this cause, and they are bound
to make it clearly out; if left doubtful whether it was given or
not, the verdict must be for the defendant." Answer. The protest
is *primâ facie* evidence, and it lies on the defendant to prove it. It
is for the jury to determine, upon the consideration of all the
evidence, whether the protest is disproved; and if disproved, they
will find for the defendant. If not disproved, the verdict should
be for the plaintiff.  6. "The plaintiff having averred a demand
of payment at the bank in his declaration, must prove this aver-
ment, or the variance will be fatal." In answer to this, the court
are of opinion that the evidence of Byrnes and Snyder sufficiently
proves this averment.  7. "That the plaintiff ought to have proved
that the cashier or other officer of the bank, was at the bank dur-
ing the usual banking hours in order to enable them to dispense
with the necessity of an actual demand." We think the evidence
of cashier Byrnes, and the evidence of the notary, sufficiently show
that the bank was open the whole day of the 4th, when at the
close of that day the note was delivered to the notary for protest.

The defendant excepted to the charge of the court, and assigned
as errors the admitting the protest and the answers to the points
proposed.

*Roberts* and *J. Fox*, for plaintiff in error. There was not sufficient
proof of notice to the endorser of non-payment of the note. *Chitt.
Bills* 512, 646; 1 *Stark. Ev.* 314; 9 *Watts* 279. It is true that the
certificate of the notary is presumptive evidence of the fact of
notice, but he may be called to explain or contradict it. 6 *Serg. &
Rawle* 484; 12 *Ib.* 284. Under the statute of New York, the
notary's certificate must specify the place where the party resides,
and the common law is the same. 19 *Wend.* 383; 2 *Wend.* 55;
10 *Johns.* 361; 7 *Wend.* 369; 5 *Wend.* 136; 7 *Halst.* 268; 4 *Wend.*
398; 20 *Johns.* 382. Notice must be put in the post-office to go
by the first mail after the day of grace. *Chitt.* 517; 2 *Wheat.* 373;
9 *Pet.* 33; 2 *Marsh.* 615; 1 *Miller's Louis. R.* 122; 2 *Verm. R.*
263; 5 *M. & S.* 68. It was error to leave to the jury to say what
was a reasonable notice. 1 *Chitt. Bills* 481; *Bayley on Bills* 222;
3 *Rawle* 359; 20 *Johns.* 372; 1 *Rawle* 338; 1 *Yeates* 553. There
was no notarial seal to the protest.

*Chapman* and *M'Dowell, contra.* The protest is sufficient
evidence of notice of non-payment. 6 *Serg. & Rawle* 324, 484;
1 *Rawle* 338. In fact, there was nothing to contradict the protest.

The case of *Weakly* v. *Bell*, (9 *Watts* 279), did not turn on a protest; the question there arose on a deposition. Whether a notice is reasonable is for the jury to say. 7 *Serg. & Rawle* 324. Where the note is payable at a bank, demand is not necessary, if there are no funds there to meet it. 1 *Rawle* 338.

The opinion of the Court was delivered by

SERGEANT, J.—The Act of 2d of January 1815, authorizes the protest of a notary to be read and received in evidence of facts therein certified, provided that any party may be admitted to contradict by other evidence such attestation. In *Stewart* v. *Allison* (6 *Serg. & Rawle* 324) and *Browne* v. *The Philadelphia Bank* (6 *Serg. & Rawle* 484), the effect of this enactment came under the consideration of this Court, and the principle was there settled that the notary's protest of a promissory note was *primâ facie* evidence of the facts contained in it, and that they stood as proved until they were repelled by contradictory evidence. The former of these was a very strong case. The plaintiff gave in evidence the protest. The notary was called by the defendant, and swore that the protest was in the handwriting of his son, who was then on a voyage to the West Indies; that he did not give notice himself; his son attended to the business, for him: that he had no knowledge of the notice having been given to the endorser of nonpayment by the maker, except what his son told him, who said he had given the notice and had written it in the protest, and that this had been the practice of doing business among the notaries. TILGHMAN, C. J., said it was very possible the jury might give more credit to the official certificate, than to the oath of the notary. He may be tampered with after giving his certificate, or the jury might think the certificate and parol evidence were not inconsistent; and he held it was for the jury. To which I may add, that it is hardly to be expected that a notary can, after a lapse of years, specify every minute item of his daily routine of business; and also that as the duty is performed by a sworn officer, under his oath, and with the solemnities of his office, the legislature of Pennsylvania have thought fit to give his attestation a peculiar sanction. The law as settled in these cases, has, it is believed, been uniformly acted on among us since, and the protest of the notary considered as establishing the fact of notice when recited in it, unless it be disproved by other evidence.

Then, in the case before us, the notary certifies in his protest of the 4th of December 1837, that he had notified the endorser by mail of the non-payment of the note: and whether this fact, thus established, *primâ facie*, was refuted, either by the notary's own testimony or that of others, was for the jury, and was properly left to them by the court. The evidence of the notary seems to amount to little more than that he could not recollect the circum-

[Jenks v. The Doylestown Bank.]

stances; but he repeatedly declares that he had no doubt that he had given notice as stated in his protest.

The parol evidence, which is not a little obscure in itself, and very confusedly spread upon our paper-book, seems to make out no more than grounds from which the defendant might argue to the jury, that notice had not been sent by the mail: for it was clearly sufficient in law, if duly sent, though Dr Jenks might not have actually received it. The credibility, however, of the witnesses, and the probability of the facts alleged on one side and denied on the other, were for the jury, and they have decided them.

As to the objection to the seal: although the seal is not such as the Act of Assembly directs notaries to make use of, yet it appears it was the seal used by Mr Snyder as his notarial seal, and was affixed as such at the time. It would, we think, be going too far, to say, that if the notary does not use a seal, in all respects corresponding with the requisites pointed out in the Act of 1791, (although such was certainly his duty), his official proceedings would be null and void. This enactment ought to be construed as directory only.

There seems nothing in the evidence to support the idea that notice was sent on Wednesday, and therefore the charge of the court in that respect was on an abstract point. And as to the variance, we have not been furnished with the declaration on the paper-book: but the case seems to fall within the principle decided in *Rahm* v. *Philadelphia Bank* (1 *Rawle* 335), that when a note is payable at bank, and the endorsee is there ready to receive payment, no further demand is necessary to charge the endorser.

Judgment affirmed.