# Zollner, Appellant, v. Moffitt.

*Promissory notes—Notice of dishonor—Indorser—Evidence—Notary's certificate.*

Where a notary certifies in the usual form of certificate that he demanded payment of the note, a copy of which is set forth in the certificate, and that payment was refused, "whereof I duly notified the maker and indorser," it is reversible error in an action on the note, for the trial judge to submit to the jury as a fact or circumstance in the case the testimony of the notary to the effect that he had no present recollection of the indorser having been sent or given notice of the dishonor of the note.

The Act of December 14, 1854, P. L. 724, makes the certificate of the notary prima facie evidence of the allegations set forth in it. The indorser may attack the correctness of the certificate by a denial that he ever received notice, but the mere testimony of the notary that he had no present recollection of sending or giving a notice is to be given no weight in support of the defendant's denial, if the notary does not deny the genuineness of the certificate and that he gave notice of dishonor as set forth in the certificate.

Under sec. 96 of the Act of May 16, 1901, P. L. 194, notice of dishonor of a promissory note may be given either verbally or in writing, and if the notary certifies that he has duly notified the maker and indorser, an indorser who is sued, must show that he has not received notice either personally or through the mail. As there is no presumption as to which way the notice referred to in the certificate was given, the question as to the manner of the notice is for the jury.

Under sec. 105 of the negotiable instruments law due notice of dishonor is deemed to have been given when it is shown that the notice was properly addressed and deposited in the post office, whether it has been received or not.

No special form is required by the negotiable instruments law to convey to an indorser the information that his note has been dishonored for nonpayment. The notice must identify the instrument and indicate that it has been dishonored. If the certificate contains a copy of the note and declares that payment had been demanded and refused, of which due notice was given to the indorser, the certificate meets the requirements of the statute.

A memorandum at the bottom of a certificate of protest that the notary sent a notice of protest, is no evidence that the indorser received it, if it appears that the memorandum is not in fact a part of the certificate nor referred to in the certificate. As it is not certified in the certificate it is not evidence under the act of 1854.

Argued Oct. 16, 1908. ·Appeal, No. 83, ·Oct. T., 1908, by plaintiff, from judgment of C. P. Washington Co., Feb. T., 1907, No. 60, on verdict for defendant in case of B. A. Zollner *v.* John H. Moffitt. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit against an indorser upon a promissory note. Before McILVAINE, P. J.

At the trial the defendant alleged that he had received no notice of the dishonor of the note.

The court charged in part as follows:

Now, the defendant on the other hand denies that he ever made any admission of that kind, and he also swears positively that he never received any notice, and he also states certain facts in regard to where he was on the day that the notice ought to have been received if given as indicated by this certificate, and that it was impossible for the notary to have delivered the notice at that time, and therefore that there is some mistake here about this certificate; and then the defendant placed on the stand the notary herself who testified that she now has no recollection of delivering the notice. Of course she admits the genuineness of this certificate, and that certificate still has the force that the act of assembly gives it, but the claim of the defendant is that the notary now saying that she has no present recollection of it, is a fact,—is a circumstance, that is to be considered by the jury in weighing the direct contradiction that is here apparent between the testimony of the defendant that he never received such a notice and the inference that is to be drawn from this certificate that he did receive it. Now, gentlemen, we believe that this is a case that the jury must determine, it being a question of fact; and you have on the one hand the certificate, and those circumstances that I have referred to that the plaintiff claims corroborate the certificate, and then on the other hand you have the express denial of the defendant that he ever received notice, and also the circumstances that he narrates as to his whereabouts at the time he ought to have received the notice,

and the testimony of the notary, and it will be for you to determine whether or not John H. Moffitt at the time specified in the act of assembly had notice of the dishonor of this note so as to make him liable, or was he discharged from liability as an indorser by reason of not having received notice that the maker had not paid it when it was due?

Defendant presented these points:

1. The certificate of the notary public who protested the note on which suit has been brought in this case, raises no presumption that notice of protest was mailed to John H. Moffitt to his address. *Answer:* That is affirmed. The presumption would be that notice of protest was given according to law, but not that notice of dishonor was duly addressed and deposited in the post office as provided by sec. 105 of the act of May 16, 1901. [2]

2. Where the plaintiff, as in the case at bar, relies upon the certificate of the notary public who protested the note as prima facie evidence that notice of protest was given to the indorser, and the certificate merely recites the fact that due notice of the protest was given to the indorser, the certificate of the notary public only amounts to prima facie evidence of personal notice to the defendant, and unless the jury are satisfied from a preponderance of the evidence in the case that personal notice of protest was given to the indorser as required by law, then the verdict should be for the defendant. *Answer:* That is affirmed. [3]

3. In order that an indorser of a promissory note may be made liable for its payment after the note has been dishonored, notice of the nonpayment must inform the indorser that the holder intends to stand on his legal right, and to resort to the indorser for payment. Mere knowledge of the nonpayment on the part of the indorser is not sufficient to charge him with liability. *Answer:* That is affirmed. That is, the notice must inform the indorser expressly or by an equivalent implication that he is looked to for payment. [4]

$3\frac{1}{2}$. The memorandum at the bottom of the certificate of protest, to the effect that the notary sent a notice of protest to John H. Moffitt, is no evidence in this case that John H.

Moffitt ever received that notice. *Answer:* That is affirmed. That is not part of the certificate,—a mere memorandum of what the certificate sets out generally. [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*John C. Bane,* with him *George L. Schuyler,* for appellant.— The notary's testimony has no weight: Sherer v. Bank, 33 Pa. 134.

The notary, who was appointed and commissioned under the laws of the commonwealth, is presumed to have known the law, to have known her duty, to have done all that the law exacted of her, and to have known when she had performed her duty: Lloyd v. McGarr, 3 Pa. 474; Kelly v. Creen, 53 Pa. 302.

The act of 1854 made "the notarial certificate of demand and notice, prima facie evidence of the facts certified to:" Baumgardner v. Reeves, 35 Pa. 250; Starr v. Sanford, 45 Pa. 193; Landis v. Marker, 2 Del. Co. Rep. 473; Wamsley v. Rivers, 34 Iowa, 463; Fuller v. Dingman, 41 Iowa, 506.

The assertion in the certificate of protest that the notary "duly notified the maker and indorsers" is sufficient evidence, in the absence of satisfactory proof to the contrary, that the notice was in proper, legal form.

The memorandum was a part of the certificate: Nichols v. Goldsmith, 7 Wendell (N. Y.), 160; McLean v. Ryan, 36 App. Div. (N. Y.) 281.

*R. W. Irwin,* with him *D. M. McCloskey* and *Jas. A. Wiley,* for appellee.—The testimony of the notary was competent: Jenks v. Doylestown Bank, 4 W. & S. 505; Craig v. Shallcross, 10 S. & R. 377.

Where the certificate does not aver that notice of protest was sent to the indorser by mail, but simply avers that due notice of protest was given to the indorser, it only raises a presumption of personal notice and it is not even presumptive evidence that notice was sent through the mails: Kase v.

Getchell, 21 Pa. 503; O'Neil v. Dickson, 11 Ind. 253; Bettis v. Schreiber, 31 Minn. 329.

The third point was predicated on the decision of this court in Marshall v. Sonneman, 216 Pa. 65, a case which was decided five years after the act of 1901 was passed, and was a suit on a note executed more than two years after the passage of that act.

The memorandum is no part of the certificate and it is no evidence of anything: Vergennes Bank v. Cameron, 7 Barb. (N. Y.) 143; Walker v. Turner, 2 Gratt. (Va.) 534.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

This is an action of assumpsit by the holder against the indorser of a promissory note. William C. Fishburn made a promissory note, dated November 1, 1905, for $2,000, payable one year after date at the First National Bank of Charleroi, Pa., to the order of John H. Moffitt, the defendant. The note was indorsed and delivered to Zollner, the plaintiff. It was not paid at maturity, and on November 1, 1906, it was presented at the First National Bank of Charleroi for payment which was refused. This action was then brought by Zollner against Moffitt, the indorser.

At the trial the defense was rested on two grounds: (1) The defendant had no notice of dishonor, and (2) he was an indorser for the accommodation of Zollner, the plaintiff.

It is not denied that on maturity of the note, November 1, 1906, it was presented by a notary public for payment at the First National Bank of Charleroi, the place of payment named in the note, and that payment was refused. The defendant, however, denies that he received notice of the dishonor of the note. To establish the fact the plaintiff offered in evidence the certificate of the notary, which is in the usual form and under the hand and seal of the notary. It certifies that the notary presented the note "at the First National Bank of Charleroi, and demanded payment thereof, which was refused, the answer being 'No attention,' whereof I duly notified the maker and indorsers." The defendant testified that he never received any notice of dishonor. He also called the notary who protested

the note for nonpayment. She testified that the protest was made by her, that she had no recollection of what she did with the notice of protest and that she had no present recollection as to whether she "sent or gave that notice to John H. Moffitt anywhere, at any time, in any place." In his charge, the court instructed the jury substantially that as corroborating the defendant's testimony, denying that he had received notice of dishonor, they could consider the notary's testimony that she had no present recollection of delivering the notice. This part of the charge is the subject of the first assignment of error.

Section 1 of the Act of December 14, 1854, P. L. (1855) 724, 2 Purd. (13th ed.) 1511, provides as follows: "The official acts, protests and attestations of all notaries public, certified according to law, under their respective hands and seals of office, in respect to the dishonor of all bills and promissory notes, and of notice to the drawers, acceptors or indorsers thereof, may be received and read in evidence as proof of the facts therein stated, in all suits now pending or hereafter to be brought: Provided, that any party may be permitted to contradict, by other evidence, any such certificate." This act, as will be observed, makes the certificate of the notary prima facie evidence of the allegations set forth in it. If there is nothing in contradiction, it is conclusive of what it contains. This certificate is in the usual form and the notary certifies that she demanded payment of the note which was refused, "whereof I duly notified the maker and indorsers." If this certificate was the only evidence on the question of notice, it would be conclusive as to notice having been given to Moffitt, the indorser. The defendant, however, attacks the correctness of the certificate as the act specifically provides he may do, and among other evidence introduced for that purpose was that of the notary, alluded to above, in which she said that she had no present recollection that she sent or gave the notice. She does not deny the genuineness of the certificate of protest and that she gave notice of dishonor as set forth in the certificate; but simply testifies that she had no recollection on the trial of the cause that she sent or gave the notice. We think it was error for the learned court to submit her failure of recollection in sending or giving

the notice as "a fact, a circumstance," to be considered by the jury in determining whether the defendant received notice of dishonor. The notary or any other witness might have been called to contradict the allegation in the certificate that she had notified the maker and indorsers; and it would have gone to the jury as any other evidence to sustain the defendant in his denial that he received notice of dishonor. But the notary's evidence as quoted above and alluded to in the charge had no tendency to contradict the certificate. She simply stated that she had no present recollection that she sent or gave notice as set forth in the certificate, but at the same time admitted that the certificate was correct and therefore that she had notified the maker and indorsers. If she had denied that she had issued the certificate of protest, or that if she had given notice she believed she would have recalled the fact, there would have been something to go to the jury in support of the defendant's contention that he did not receive notice of dishonor. The simple fact that her mind was a blank at that time as to what she admitted was the truth, as shown by her certificate, that notice of dishonor had been given, should not have gone to the jury with instructions that they should consider it in support of the defense that the indorsers had not received notice. In the language of Mr. Justice STRONG in Sherer v. Easton Bank, 33 Pa. 134, 140, "that the notary did not recollect it, amounts to nothing; the certificate was positive proof; the want of recollection, no proof at all." The first assignment is sustained.

Section 96 of the Act of May 16, 1901, P. L. 194, 3 Purd. (13th ed.) 3291, known as the negotiable instruments law, declares as follows: "The notice (of dishonor) may be in writing or merely oral, and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment. It may in all cases be given by delivering it personally or through the mails." The certificate of protest of the notary in the present case says: "I duly notified the maker and indorsers." There is nothing in the certificate to indicate how the notice was given, whether it was verbal or in writing. The act permits the notice to be given in either way and declares it to be lawful. Neither is there any-

thing in the certificate of protest to indicate whether the notice of dishonor, certified to have been given in this case, was delivered personally or through the mails. Here again the law permits the alternative and declares that either is sufficient. The notary, therefore, could have "duly notified the maker and indorsers," as she certifies she did, by a notice either oral or in writing through the mails. This is apparent, and not open to doubt. It therefore logically follows that to meet the allegation of notice as contained in the certificate of protest, which was prima facie evidence, the defendant was compelled to show that he had not received notice which had been served personally or through the mails. The certificate of protest being prima facie evidence, raised a presumption that notice of dishonor was given either personally or through the mails. The protest of the notary is considered as establishing the fact of notice when recited in it, unless it be disproved by other evidence: Sergeant, J., in Jenks v. Doylestown Bank, 4 W. & S. 505, 510. Giving notice in either way would have complied with the statute, and the law presumes that the notary did her duty; and especially so in this case where she certifies that she "duly notified" the indorsers. There was, however, no presumption as to which of the two ways provided in the statute the notice of dishonor was given, and hence the court could not so declare as matter of law. The interpretation of the facts in the certificate of protest was for the jury, and it was for them to determine the manner in which the notice was given: McGee v. Northumberland Bank, 5 Watts, 32. In that case it is said (p. 33): "Had the notary testified in person, as he might, that he had given notice at Northumberland, no one would pretend it to be the province of the court to say whether he meant that he had given it through the post office, or that the party was present to receive it. His meaning would be for the jury, and so it must be in respect to what he testifies under the sanction of any official, instead of a judicial oath."

Prior to the enactment of the negotiable instruments law, if notice of protest was sent by a letter, prepaid, properly addressed, and deposited in the post office, there was a presumption that it reached its destination by due course of mail, but

the presumption could be rebutted by evidence showing that it was not received, and when such evidence was produced, it was a question of fact for the jury: Jensen v. McCorkell, 154 Pa. 323. Section 105 of the negotiable instruments law has changed the former law on this subject by providing that "where notice of dishonor is duly addressed and deposited in the Post Office, the sender is deemed to have given due notice, notwithstanding any miscarriage in the mails." Under this section due notice of dishonor is deemed to have been given when it is shown that the notice is properly addressed and deposited in the post office, whether it has been received or not. In other words, the purpose and effect of this section of the act were simply to protect the sender of the notice against miscarriage of the mails. The section does not in any manner affect the case in hand. The question here is not whether there is a presumption that notice was duly mailed, but whether the presumption arising from the certificate that notice of dishonor was duly given the indorser has been met and overcome by the defendant.

The second and third assignments of error are sustained.

The learned trial judge was in error in affirming the defendant's third point. He and the learned counsel for the defendant were misled by the syllabus in Marshall v. Sonneman, 216 Pa. 65. The first paragraph of the syllabus is misleading and does not state correctly what was decided in the case. It is quoted from a very old case of this court which is cited in the opinion in Marshall v. Sonneman. That case as well as the other authorities referred to were cited in the opinion to show that mere knowledge by an indorser of nonpayment of a note was not sufficient notice of dishonor. Marshall v. Sonneman was an action by the holder against an indorser, and the defense, as here, was failure to give notice of dishonor. There were two indorsers and in giving notice the notary handed to the defendant the notice intended for the other indorser. The notice in form was sufficient and gave notice to the indorser to whom it was addressed of nonpayment "and that the holders look to you for the payment thereof." The trouble arose from the fact that the notary delivered to the defendant the notice in-

tended for the other indorser, and it was held that it was not notice to the defendant. The second paragraph of the syllabus states the decision correctly: "Notice of protest signed by a notary public, and personally delivered by him to the indorser is not sufficient to charge the latter, where it appears that the notice was addressed to another person than the indorser, and stated that the holder looked to such person for the payment of the note." The negotiable instruments law declares what notice of dishonor shall contain. The section referred to above provides, inter alia, as follows: "The notice (of dishonor) . . . . may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment." There is therefore no special form required by the act to convey to an indorser the information that his note has been dishonored for nonpayment. The notice must identify the instrument and indicate that it has been dishonored. Referring to the certificate under consideration, we see that it contains a copy of the note and declares that payment had been demanded and refused, of which due notice was given to the indorsers. It meets the requirements of the statute. If notice of the facts stated in the certificate was given, we have no doubt whatever of its entire sufficiency. The fourth assignment must be sustained.

The court was right in holding, as requested in the defendant's point numbered 3½, that the memorandum at the bottom of the certificate of protest that the notary sent a notice of protest was no evidence that "Moffitt ever received that notice." The memorandum was not a part of the certificate nor was it referred to in the certificate. The act of 1854, as we have seen, makes only such official acts of the notary prima facie evidence as are "certified according to law." As this memorandum was not a part of the certificate nor referred to in it, it was not certified by the notary and hence was not evidence of what it purported to contain. Had it been admitted, however, it would not have added any strength to the plaintiff's case, as the certificate averred the same fact.

The judgment is reversed with a venire facias de novo.