# CHARLESTON.

H. P. THORN v. F. VERNON ALER AND J. A. BUTLER.

Submitted November 1, 1922.        Decided November 14, 1922.

1.  BILLS AND NOTES—*Certificate of Notary of Protest Prima Facie Evidence of Facts Stated; Facts Held to Constitute Due Protest of Note.*

    The certificate of the notary of the protest of negotiable paper constitutes prima facie evidence of all the facts stated therein, and if they show presentment and demand of payment at the time and place and within the proper hours of the day of payment, and refusal of payment, and notice thereof mailed on the same or the day after such dishonor of the paper, in sealed envelope properly addressed to the drawer or endorser thereof, directed to the place of residence of such drawer or endorser, such facts constitute in law due protest of the paper, sufficient to bind such drawer or endorser for the payment thereof.   (p. 293).

2.  SAME—*Instruction That Certificate of Protest Was Not Prima Facie Evidence if Note Had Not in Fact Been Protested Held Properly Refused.*

    In a suit upon a protested note the court could not properly instruct the jury that if they found that the note sued on had not in fact been protested on the day stated in the certificate

of protest, such certificate could not be regarded as even prima facie evidence of the facts recited. The fact that such paper may not have been protested on the day stated, would be evidence to overcome the prima facie character of the certificate of protest, but not to deny it the prima facie character to which it is entitled under the statute. (p. 297).

3.   SAME—INSTRUCTION—*Jury Could Not Consider Certificate of Notary as to Protest if He Did Not Make Memorandum of Note Properly Refused.*

Nor would it be proper on the trial of such suit on a protested note for the court, as requested by defendant in this suit, to instruct the jury that if they found from the evidence that the notary did not make a memorandum on the note sued on of the facts constituting the protest thereof, then the note was not in fact protested, and they could not consider the certificate of the notary as to such protest. Such an instruction would be misleading and deny to the certificate of protest the prima facie effect accorded it by the statute. (p. 297).

4.   SAME—*Notary Could Correct Notation on Note and Certificate of Protest to Correspond With Facts as to Date of Presentment, Demand of Payment and Dishonor.*

When a note by its terms falls due on Sunday, but by the law in such case becomes due and payable on the following Monday, and in protesting the note on the latter day the notary makes a mistake in his notation on the note and in his certificate of protest by stating the date of presentment, demand of payment and dishonor of the paper, as having been done on Sunday in place of Monday, the notary may properly correct his notation and certificate to correspond with the fact without destroying the prima facie effect as evidence of the protest, when introduced in evidence. (p. 299).

5.   SAME—*Evidence as to Custom of Notary Admissible on Question of Whether Notices of Protest Were Actually Posted as Recited in Certificate.*

When a notary protesting a note is an officer of the bank where the note is payable, and shows that he is accustomed to make out notices of protest after four o'clock of each business day and enclose them in envelopes, properly stamped and addressed to endorsers, and to deposit them in the place where the daily mail of the bank is accustomed to be deposited to be carried by the messenger of the bank to the post office, this evidence will be competent to go to the jury on the question of fact whether such notices were actually posted as recited in his certificate of protest. (p. 299).

Error to Circuit Court, Berkeley County.

Suit by H. P. Thorn against F. Vernon Aler and J. A. Butler. Judgment for plaintiff, and the last-named defendant brings error.

*Affirmed.*

*Walker, Kilmer & Byrer,* for plaintiff in error.

*H. H. Emmert,* for defendant ih error.

MILLER, JUDGE:

This suit was begun in the circuit court by a notice of motion for judgment on the past due note of the defendant Aler, dated July 13, 1921, whereby sixty days after date Aler promised to pay to the order of Butler nineteen hundred and seven dollars and one cent, value received, negotiable and payable at the Old National Bank of Martinsburg, and endorsed by Butler to plaintiff, who was and still is the owner and holder thereof.

The notice avers that upon the maturity of said note it was presented for payment at the time and place of payment designated therein, payment demanded and refused, and that thereupon the said note was duly and regularly protested for non-payment, and that the charges of protest were $1.12, and that notice of protest was duly given to said Butler as endorser, and that it was still unpaid and held by the plaintiff.

Accompanying the notice was the statutory affidavit of the plaintiff as to the amount due on the note, described substantially as in the notice for judgment, the amount claimed in the affidavit being the principal of the note, with interest from maturity to October 19, 1921, the date of the affidavit, and the costs of protest, aggregating $1928.15. The verdict and judgment was for $1962.79.

By plea in writing the defendant Butler answered that he was not indebted to the plaintiff on said note in the amount alleged, nor in any amount; that he was an accommodation endorser on said note, which was payable at the Old National Bank of Martinsburg as alleged in said notice; but that upon its maturity the said note was not presented for payment at

the place of payment and payment demanded and refused, and that said note was not duly and regularly protested for non-payment, nor was notice of protest and dishonor duly given him, nor was any notice thereof given at all; wherefore he avers he is not liable in any amount on said note; and issue was joined on said plea.

The controlling questions of fact in dispute before the court and jury on the trial were: (1) whether the note had been presented for payment at the time and place appointed; and (2) whether notice of the dishonor thereof had been duly given the endorser so as to render him liable to the plaintiff thereon.

The plaintiff introduced in evidence the note with the certificate of protest attached, the note showing endorsed across its face, "Protested for non-payment Sept. 11, 1921," but showing that the figure "2" had been written over the second figure in the date; and signed "W. F. McAneny, Notary Public." The certificate of protest attached was in due form and signed by the notary, and on the face thereof showed that on September 12, 1921, the original of said note was, at the request of the holder thereof, presented to the cashier of the Old National Bank of Martinsburg, West Virginia, at said bank in Martinsburg, West Virginia, where the said note was payable, and payment thereof demanded, which was refused, whereupon the same was, at the request of the holder, solemnly protested against the drawer and endorsers, and that notices, partly written and partly printed, were placed in the post office at said Martinsburg, directed to the said J. A. Butler at Inwood, W. Va., post-paid, respectively informing them of said demand, non-payment, protest and dishonor of said note.

On the offer of the note, with the endorsement across the face thereof and the certificate of protest thereto attached, and upon the concession by counsel that the date of the protest endorsed on the face of the note and also on the face of the certificate had then recently been changed by the notary to correct the mistake in the actual date of the presentment and protest by the notary, the defendant Butler objected to the

introduction of the note, the endorsements thereon, and the certificate of protest. The court overruled the objection and permitted both note and certificate to go in evidence. After proving by plaintiff his ownership of the note, that he had no knowledge that the note had been protested on September 11th, and that he knew nothing of the fact that the date of the protest and the certificate had been changed, the plaintiff rested his case. But after defendants had introduced one witness, one D. H. Rogers, an attorney, and proved by him that he had seen the note in the office of plaintiff's counsel a few days before, and that the date of the protest had not then been changed from September 11th to the 12th, which was conceded by counsel for plaintiff, the plaintiff called as a witness in his behalf W. F. McAneny, the notary, and also cashier of the Old National Bank of Martinsburg, and proved by him that this change in the date was made to correct an error; that September 11, 1921, the due date of the note, fell on Sunday, but by law changed to Monday the 12th; and that the mistake was the result of writing at the head of the note the due date instead of September 12th, the date the note was actually due and payable, and when it must necessarily have been presented and protested. He admitted he kept no other memorandum of the presentment and protest except what was endorsed on the face of the note and contained in the certificate of protest, and had no other record of the transaction; but said that in the usual course of business at the bank notes which fell due on Sunday were presented and protested on Monday, and that it was only from this usual course of business and his reference to the dates on the note and the protest and the date on the calendar that he could speak as to the actual facts of the true date thereof.

As to the fact of the mailing of the notice of protest to the defendant Butler, McAneny could only say that in the usual course of business protest notices were made out after four o'clock of each business day and put with the rest of the mail of the bank, which was taken to the post office and deposited by a regular post office messenger.

To sustain the plea of the defendant Butler, he introduced

his co-defendant Aler, the maker of the note, who swore that
he called at the bank on Thursday following the date of the
maturity of the note and was shown the note by one or the
other of the two tellers of the bank, he could not remember
which of the two, and that it did not then have endorsed on
its face any stamp or endorsement of protest.  This evidence
was objected to, but was admitted over the plaintiff's objec-
tion.  He also said that later that evening he talked with Mr.
McAneny about it, and said to him that he was going to
Hagerstown to raise the money to pay the note, and that
McAneny suggested leaving the note lie there.  Aler had
other notes in the bank, it seems, and he says he asked Mc-
Aneny about all of them in general.  He was asked on cross-
examination:    ''Did you ask him particularly about the
amount due on this note?''  His answer was:  ''No, I did
not, because I had already gotten that.''  And he then ad-
mitted that if he said so, he was mistaken in his previous
examination in saying that he asked McAneny about the dis-
count or interest on the note in suit.

To test the accuracy of Butler's memory and to discredit
his evidence as a witness on the question of notice of the dis-
honor of the note, he   was  asked  on  cross-examination
whether he was not on a number of Aler's notes and he an-
swered that he was, but could not remember how many.  He
was further interrogated by counsel, and answered as follows:
''Q.  How many notes were you on for Mr. Aler at the First
National Bank of  Hancock?   A.   Three, I think.   Q.
Wasn't it five?  A.  Maybe.  Q.  How many notes are you
on for him at the First National Bank of Hagerstown?  A.
One.  Q.  How many notes for him were you on at the Old
National Bank of Martinsburg?  A.  I don't know.   Q.
About?  A.  I don't know, I couldn't say.  Q.  How many
were you on at the Merchants and Farmers Bank?  A.  I
don't know.  Q.  Did you ever receive notice of protest of
any notes you endorsed for Aler?  A.  Yes, sir.  Q.  Which
ones?  A.  Well, I don't know which notes they were on.
Q.  Couldn't you have gotten  the  notice of  protest and
thought it was a protest of a note that was due at the Old

National?   A.   I didn't get notice.   Q.   Never got any?
A.   Not of that note.   Q.   How do you know?   A.   Well,
I usually open my mail.   Q.   Did you ever get a notice of pro-
test of any note?   A.   Yes, sir.   Q.   Did you get the notice of
protest of a note of the First National Bank of Hancock on
the 28th day of February?   A.   I don't know.   Q.   Did you
get a notice of protest from the Old National Bank of Mar-
tinsburg on a note made by F. Vernon Aler, dated January
15, 1921, due March 16, 1921, for $1907.01?   A.   No, sir.
Q.   Did you ever get a protest notice for a note of that
amount from anybody.?   A.   No.   Q.   (By defendant's
counsel)   Were you on any other note of H. P. Thorn, except
this note for $1907 and its renewals?   A.   That, I couldn't
tell you.   Q.   (By plaintiff's counsel) Did you ever get a
protest of a note of the Thorn Lumber Company for $1400,
about?   A.   I don't recollect.''

Counsel argued from this evidence that little if any weight
should be given the testimony of Butler. It went in, how-
ever, over plaintiff's objection, and the jury evidently gave it
such consideration as in their judgment it was entitled to.
They had it in their power to say whether it was sufficient
to overcome the prima facie evidence of the facts contained
in the certificate of protest; such was the province of the
jury.

At the conclusion of the evidence, the court, at the in-
stance of plaintiff, instructed the jury as follows:

"The court instructs the jury that the certificate of pro-
test attached to the note introduced in this case was prima
facie evidence of the facts stated in the certificate—that is,
that said note was duly protested at the Old National Bank
of Martinsburg, the place where said note was payable on the
day said note matured, that payment thereof was demanded,
which payment was refused; and that said note was duly pro-
tested; and that notice of said presentation, demand and
non-payment was placed in the post office at Martinsburg,
post paid, directed to J. A. Butler at his nearest post office,
informing said J. A. Butler of said demand, non-payment,
protest and dishonor of said note; and if the jury further'

believes that the presumption of said facts has not been over-
come by the testimony of the witnesses then they shall find
a verdict for the plaintiff and against the defendant Butler
for the amount of said note, interest and protest charges.''

By an instruction 'on behalf of the defendants the court
presented to the jury the counter proposition, that before
they could find for plaintiff, they must be satisfied by
a preponderance of the testimony that the note sued on was
presented for payment and dishonored on the 12th day of
September, and that notice thereof was placed in the post
office of the United States at Martinsburg, West Virginia,
addressed to the defendant Butler, either on the 12th day of
September, 1921, or on the following day, and unless so satis-
fied, they should find for the defendant. These two instruc-
tions fairly presented the only issues in the case.

But the defendant requested two other instructions, which
the court refused, first of which would have told the jury
that if the note sued on was not actually protested on Sep-
tember 12, 1921, then the certificate of protest purporting to
show the fact of such protest was not even prima facie evi-
dence of presentment, dishonor and notice of dishonor of
the note. The second would have told the jury that if the
notary did not make a memorandum on the note sued on,
either by the impression of a stamp, or in some other way,
on September 12, 1921, to the effect that the same was pro-
tested on that day, then the note was not in fact protested,
and they should not consider the certificate of the notary
introduced in evidence purporting to show the protest of
the note on that day.

The ruling of the court on the first of these rejected in-
structions may be justified perhaps on the ground that the
subject thereof was substantially covered by the two instruc-
tions given, number one for the plaintiff and number one for
defendant. But a second ground is that it was misleading.
The certificate of protest did in fact continue to be prima
facie evidence of the facts stated, though of course the prima
facie character of the evidence might be overthrown by proof
satisfying the jury that the certificate was not true, but false.

The ruling on the second of the rejected instructions was justified on the ground that it would have destroyed the prima facie evidence of the certificate of protest if the jury should find that a memorandum of the protest had not been endorsed on the note on September 12, 1921. While the usual and proper way perhaps is for the notary to endorse his memorandum of protest on the face of the note, it may be made on some other record. The certificate of protest would itself be sufficient if made at the time or on the same day shortly after the presentment, demand and protest. In the case here the claim is that the noting of the facts was not only made upon the note at the time, but that they were extended into the certificate on the same day.

Under our uniform negotiable instruments law, chapter 98A Code 1918, it is no longer necessary, in order to hold the endorser, that the instrument be formally protested, except in the case of a foreign bill of exchange. If the instrument has been duly dishonored by presentment, non-acceptance or non-payment, and notice thereof to drawer or endorser, as the case may be, there need be no formal certificate of protest. But if the holder would preserve the prima facie evidence of the facts necessary to charge drawer or endorser, he may have the instrument formally protested by the notary. So it is provided in section 118 of said chapter 98A. And section 7 of chapter 51 of the Code, relating to notaries public and commissioners, and section 8 of chapter 99, relating to bills, notes and other writings, now superseded by corresponding provisions of said chapter 98A, also so provide. In the case of *Peabody Insurance Company* v. *Wilson,* 29 W. Va. 528, it was held that the true construction of the former sections of the Code was that the certificate of protest of a negotiable note, or other instrument mentioned therein, constituted prima facie evidence of the facts stated therein. Such evidence, it was held, was in the nature of documentary evidence. And of course, as held in that case, it is a question of law for the court to determine whether the facts stated constitute due presentment or notice so as to charge the endorser. In the case here, however, it is not

denied that the facts certified, if true, are sufficient in law to hold Butler, the endorser on the note sued on. And it is conceded, as provided by section 105 of said chapter 98A, that if notice of dishonor has been mailed to an endorser, the sender is deemed to have given notice notwithstanding any miscarriage of the mails.

One of the principal questions argued pro and con by counsel for the parties is whether the admitted change in the date in the endorsement on the face of the note and in the certificate of protest destroyed the notation or the certificate as prima facie evidence of the facts recited. That such a mistake in the certificate may be corrected by the notary by reference to his notations, but not from memory, was decided a long time ago, in *Bailey* v. *Dozier,* 6. How. 23, 12 Law Ed. 328. This case and that of *Mattingly* v. *Bank of Commerce,* (Ky.), 43 S. W. 1043, hold that where the notary has actually made on the note or other record his notations, he may extend them into his certificate within any reasonable time thereafter. It is so laid down with reference to the authorities in 2 Daniel on Neg. Inst. (6th ed.), § 939, page 1115; and is so decided in *Moreland's Adm'r.* v. *Citizens Savings Bank.* (Ky.), 71 S. W. 521. According to these authorities a notary should not be permitted to contradict his record by his oral evidence. But will this rule deny him the right or authority to correct the same as to plain and palpable facts, as the date the protest was actually made, when he can do so by reference to his notations or to his certificate of protest, the records of the bank, and to the calendar of months and days? Courts take judicial notice that banking institutions do not do business on Sundays; and a certificate of protest saying a note falling due on Sunday was then protested, would on its face be some evidence of a mistake correctable by reference to the calendar, and the law applicable thereto.

Finally, we must inquire whether the fact of notice to Butler, of the dishonor of the note, prima facie evidence of which was so established by the certificate of protest, was overthrown by the admission of the notary that he could not

remember the fact of the mailing thereof. He certified the fact in his certificate of protest, and of course would not be permitted to contradict his certificate by such negative testimony. So held in *Zollner* v. *Moffitt,* 222 Pa. St., 72 Atl. 285. He does admit that he did not in person place notices of protest in the post office, but said that it was his custom, in the due course of business, to prepare written notices of protests after four o'clock of the day the paper fell due, enclose these in sealed envelopes duly stamped, addressed to the drawers or endorsers of the paper protested, and to deposit them in the place where the outgoing mail of the bank was customarily left, to be taken to the post office by the bank's messenger in his line of duty. In Connecticut this evidence was held to be admissible, and in the absence of any denial of the receipt of the notice, sufficient to justify the court in finding that such notice was received by the addressee. *Central Bank* v. *Stoddard,* 83 Conn. 332. The evidence of the defendant Butler, denying that he had ever received any notice of protest in this case, was competent to go to the jury. We think, however, in view of the certificate of protest and the character of the evidence of Butler respecting other notes endorsed for Aler and his inability to recall the facts with respect to notices of protest as to them, that the court and jury were justified in finding against him.

Finding no error justifying reversal, we are of opinion to affirm the judgment.

*Affirmed.*